George W. Seibert v. R. B. Richardson et al.

No. 71.

1. Land Certificate—Nonreturn of Field Notes—Forfeiture.

A land certificate was located in 1869. The survey was forfeited for non-return of the certificate to the General Land Office. The certificate was not thereby invalidated. It could be used to appropriate other land in 1874. See Act November 29, 1871, Pasch. Dig., art. 7097 ...... 297

2. Construction of Statute—Forfeiture.

Where there are several rights that might be affected by failure to do some particular act or acts, the declaration that such failure shall operate a forfeiture of one or more of these rights shows the intent that no other right but those named shall be thus lost or forfeited ..... .. 298

3. Validation of Land Certificates—Constitution of 1869.

Article 10, sections 2, 3, and 4, of Constitution of 1869, recognized the right of every owner of an unsatisfied genuine land certificate through it to acquire the quantity of land called for.......................... 298

4. Unsatisfied Land Certificate.

A land certificate can be said to be satisfied only when the obligation imposed by it is discharged in the manner contemplated when it issued; that is, until the land called for is secured to its owner by survey and return of its survey to the Land Office .............................. 298

5. Case Adhered to—Location of Certificate by Other than Owner.

Beatty v. Masterson, 77 Texas, 171, adhered to. The owner of a land certificate may assert title to land secured under a duplicate obtained and located by one in fraud of such owner. His want of knowledge or consent does not prevent his assertion of ownership............... 299

Questions Certified from Court of Civil Appeals for Second District, in an appeal from the District Court of Wilbarger County.

*A. H. Corrigan*, for appellant.

*Stephens & Huff*, for appellees.

STAYTON, Chief Justice. — The following questions are certified for decision:

"First. When a valid land certificate was located in the year 1869, and the survey forfeited for the nonreturn of the certificate to the Land Office, was the certificate itself thereby invalidated; or could it be used to appropriate other land in the year 1874?

"Second. If this question should be answered in favor of the validity of the certificate, then in case a duplicate thereof was issued in 1873 by the Commissioner of the Land Office, upon proof of the loss of the original, and located in 1874, could a subsequent locator defeat a recovery by virtue of such survey made in 1874, under such duplicate certificate, by showing that the duplicate was issued at the instance of a stranger to the title, upon his false and fraudulent representations of ownership, followed by location without the knowledge of the true owner, who, upon its coming to his knowledge, ratified such issuance and location of the duplicate certificate?

"In the cases stated it will be noted that no patent has issued, and that the State is not a party to the litigation."

The only statutes having any bearing upon the first question will be considered.

The Act of August 30, 1856, still in force, provides, that "It shall not be lawful for such surveyor to allow the holder of any land certificate or scrip, or other legal evidence of title to land, to lift or float the same after entry, location, file, or survey, when the same is not made upon land previously appropriated. But when a conflict of entries, files, locations, or surveys occur, upon a proper showing of the facts, which may be by the certificate of one of his deputies, or from his own knowledge, he shall allow the party having his entry, file, location, or survey of subsequent date to lift so much thereof as shall be affected by such conflict." "Whenever an entry is made by virtue of a genuine certificate upon any land which appears to be appropriated, deeded, or patented by the books of the proper surveyor's office, or records of the County Court or General Land Office, the party making such entry shall abide by the same. And in the event that judgment final shall be rendered against the right of the party making such entry to hold such land, he shall not have the right to lift or re-enter said certificate. But the same shall be forfeited, and so declared to be by the judgment of the court." Pasch. Dig., arts. 4574, 4575.

The purpose of the article just quoted was to prevent persons from holding at the same time, by virtue of the same certificate, several tracts of land with apparent rights to each, when but one could ultimately be held.

Such a practice was prevalent at the time the act was passed, and tended to embarrass the right of others to appropriate lands by virtue of valid

land claims held by them; and unless the land certificate was required to remain in the office of the surveyor with whom the location was made until sent to the General Land Office, there were no means of determining from the records of any one of the surveyors with whom location was made, that it was no longer a valid claim on land covered by it; but that statute was not intended to deprive the owner of a certificate of right through it to acquire other lands if the location became inoperative by failure to comply with the requirements of the Act of February 10, 1852. Pasch. Dig., arts. 4562–4568.

By article 4575, however, a forfeiture of the certificate was declared if it was located on land shown by the records therein referred to to have been appropriated prior to the time the location was made.

Each of these articles was intended to remedy separate evils then existing; but they manifest no intention to deprive a land certificate when once located on vacant land of the efficacy it possessed before location, except in the one instance in which the forfeiture of the right to acquire other lands by virtue of the certificate is expressly declared.

The Act of February 10, 1852, required lands to be surveyed within twelve months after location, and also required surveys to be returned to the General Land Office within twelve months after they were made, and a failure in either of these respects deprived the locator of any right to the particular land and rendered it subject to appropriation by any other person; but the certificate in such case could be used to acquire the same or any other land. Pasch. Dig., arts. 4563, 4566, 4568.

When such failure occurred, the records of the proper offices would show the fact, and every person desiring to acquire lands would have means whereby to ascertain that the land had again become a part of the public domain.

By the Act of November 29, 1871, it was declared, that "In all locations and surveys of land heretofore made by virtue of any such certificate as is specified in the first section of this act, and in which the field notes have been returned to the General Land Office, and the certificate by virtue of which the survey was made is not on file in the General Land Office, nor has been withdrawn for location of unlocated balance, as is provided in the first section of this act, such certificate shall be returned to and filed in the General Land Office within eight months from the passage of this act, or *the location and survey made by virtue thereof shall be null and void.* (2) And in all locations heretofore made, in which the field notes have not been returned to the General Land Office, they shall be so returned within the time prescribed by law, and shall be accompanied by the certificate by virtue of which the survey was made, or such *location and survey shall be null and void.*" Pasch. Dig., art. 7097.

This statute covers the period mentioned in the first question certified, and embraces the very ground on which it is said the survey made in

1869 was forfeited; but the forfeiture declared by the statute for such failure is that of the *location and survey*, and there is no intimation of intent to divest the certificate of its efficacy in the acquisition of land on account of the failures referred to.

When there are several rights that might be affected by failure to do some particular act or acts, the declaration that such failure shall operate a forfeiture of one or more of those rights shows intent that no other right but that named shall be thus lost or forfeited.

The first section of act last referred to further shows absence of intention to forfeit the land certificate for failure to comply with its requirements; and for those only declares a forfeiture of the location and survey. Pasch. Dig., art. 7096.

The Constitution of 1869 practically construes and applies the Acts of February 10, 1852, and October 30, 1856.

Article 10, section 2, provides as follows: "That the residue of the public domain may be ascertained, it is declared that *all surveys of land* heretofore made and not returned to the General Land Office in accordance with the provisions of an act entitled 'An act concerning surveys of land,' approved 10th February, 1852, are hereby declared null and void."

This declares the status of such surveys, and not that of the certificates by virtue of which locations and surveys may have been made.

It further declares, that "All certificates for land located after the 30th day of October, 1856, upon lands which were titled before such location of certificate, are hereby declared null and void: *Provided*, that in cases where the location, for want of correct maps or proper connection of surveys, is found to be in conflict with older surveys, whether titled or not, such certificate may be lifted and relocated." Const., art. 10, sec. 3.

This has application directly to certificates, and evidently was intended as a declaration of the only ground on which genuine certificates were to be denied effect.

This intention is manifested by the next section, which declares, that "All unsatisfied genuine land certificates now in existence shall be surveyed and returned to the General Land Office by the 1st day of January, 1875, or be forever barred."

The leading purpose of this section was to prescribe a time within which genuine land certificates should be so used as to entitle their holders to particular tracts of land, and to have evidence in the General Land Office of a complete appropriation; but it recognizes the right of every holder of an *unsatisfied* genuine land certificate through it to acquire the quantity of land called for.

A genuine land certificate can be said to be satisfied only when the obligation imposed by it is discharged in the manner contemplated when it issued, and this does not occur until the quantity of land for which it issued has been secured to its owner.

If a patent has issued to its owner for the quantity of land subject to appropriation by it, which he selected and caused to be identified in the manner prescribed by law, then the certificate no longer remains unsatisfied.

If location and survey by virtue of a genuine certificate be made on sufficient land thus subject to appropriation, and the survey, with the certificate, be returned to the General Land Office as the statute requires, then the certificate no longer remains unsatisfied; for such facts confer right to the land so appropriated, which the owner of the certificate can not abandon and thus acquire right to have other land by virtue of it. Adams v. Railway, 70 Texas, 277.

In case cited this court declined "to hold that a certificate once located can never afterwards give right and power to appropriate other lands, when the location becomes ineffective by failure to survey and return, when the statute provides that on such failure the land shall return to the mass of unappropriated public domain."

Under the facts stated, the certificate could lawfully be used in 1874 to appropriate land other than that located and surveyed by virtue of it in 1869.

The second question certified is not based on facts which would in any respect permit the application of the rule announced in Beatty v. Masterson, 77 Texas, 171, which is now approved and referred to as the answer to that question.

Delivered December 21, 1893.