## MRS. MARIE ANCHOR V. WICHITA COUNTY WATER IMPROVEMENT DISTRICT NUMBER 2.

No. 6788. Decided March 24, 1937.
Rehearing overruled May 12, 1937.
(103 S. W., 2d Series, 135.)

*Lyndsay D. Hawkins,* of Breckenridge, *Bonner, King & Dawson,* of Wichita Falls, and *Virgil Childress* and *Wm. N. Bonner,* both of Houston, for plaintiff in error.

The court erred in rendering judgment foreclosing a lien against all of the land for the collection of the judgment awarded plaintiff, because, under plaintiff's own pleading and under the judgment, a large part of the land was not claimed as irrigable or tillable or subject to the tax of $3.50 per acre, but only to a tax of seven cents per acre, and a judgment containing a recovery, partly on the basis of seven cents and partly

on the basis of $3.50 per acre, decreeing foreclosure on the entire tract to collect the entire debt was fundamentally erroneous. Holt v. Wichita County Water Imp. Dist. No. 2, (Com. App.) 63 S. W. (2d) 369; Richey v. Moore, 112 Texas 493, 249 S. W. 172; Davis v. West, 5 S. W. (2d) 870 (error refused).

*A. H. Britain*, of Wichita Falls, for defendant in error.

Taxes may be levied on an ad valorem basis according to the value of the property, or the taxes may be levied upon a benefit basis of so much per acre for irrigable and so much per acre for nonirrigable land. Western Union Tel. Co. v. Wichita County Water Imp. Dist., (Com. App.) 30 S. W. (2d) 301; Dallas County Levee Dist. v. Looney, Attorney General, 109 Texas 326, 207 S. W. 310; Thomas v. Dallas County Levee Dist., 23 S. W. (2d) 325.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This is a tax suit filed against Mrs. Marie Anchor, P. P. Lankford and R. S. Allen, by Wichita County Water Improvement District No. 2, for the collection of taxes due the water district for the years 1924 to 1928, inclusive. Judgment was rendered by the trial court on an instructed verdict in favor of the water district for the respective amounts found to be due. Neither Allen nor Lankford appealed. Upon appeal by Mrs. Anchor the Court of Civil Appeals entered an order reversing the judgment of the trial court and remanded the cause as to her, leaving undisturbed the judgments rendered against the other defendants.

The ground upon which the case was reversed and remanded was that the trial court had erred in excluding certain evidence offered upon the trial by Mrs. Anchor with respect to the nonirrigability of a large portion of her land. Upon motion by the district for rehearing and to certify, the court withdrew its opinion and certified to this Court two questions. The first reads:

"Was the evidence offered and excluded sufficient, prima facie, to require the submission to the jury the issue whether or not the classification of approximately 200 acres of the tract as irrigable and the assessment made thereon as above shown so arbitrary as in law to render the same unconstitutional and void?"

This question was answered in the negative. 123 Texas 105, 66 S. W. (2d) 657.

The second question inquired whether Mrs. Anchor was precluded from urging the invalidity of the classification referred to in the first, by reason of her failure to present to the board of directors of the water district her application to exclude her nonirrigable land from the district under the provisions of the statutes providing a method therefor. This question was rendered immaterial on account of the negative answer to the first.

The Court of Civil Appeals in obedience to the holding of this Court in answering the first question in the negative, sustained the water district's motion for rehearing and set aside its former order reversing and remanding the cause, and affirmed the judgment of the trial court as to Mrs. Anchor for the amount found to be due and for foreclosure of lien against her land.

Application for writ of error by Mrs. Anchor was granted on an assignment alleging that under the pleading of the water district, and under the judgment, a large part of the land was not claimed to be irrigable or tillable or subject to the tax of $3.50 per acre, but only to a tax of seven cents per acre; and that since the judgment contained a recovery of a sum certain, partly on the basis of seven cents and partly on the basis of $3.50 per acre, the blanket foreclosure as to the entire tract was fundamentally erroneous.

**1, 2** Since the appeal by Mrs. Anchor to the Court of Civil Appeals was upon the transcript without a statement of facts, it must be presumed that the evidence supports the judgment of the trial court. Ex parte Birkhead, 127 Texas 556, 95 S. W. (2d) 953. Whether the judgment complained of is fundamentally erroneous on the ground alleged in the assignment of error must be ascertained from the transcript.

It appears from the allegations of the pleadings of the water district that it was organized and established in 1920 under Section 52 of Article 3 of the Constitution, and under the provisions of Chapter 87, p. 172, et seq., of the Acts of the Regular Session of the Legislature of 1917 and amendments thereto, as a water improvement district; and that subsequent thereto the district was converted into a conservation and reclamation district by virtue of Section 59, Article 16 of the Constitution, and acts and amendments pursuant thereto, which have been carried into Vernon's Texas Statutes as Title 128, Chapter 8, pertaining to conservation and reclamation districts. The facts are fully set out with respect to the creation of the district, the action of the board of equalization in classifying the lands within the district as to irrigability, the notice

thereof given the respective owners, including Mrs. Anchor, her failure to appear and protest either then or upon a subsequent reclassification, the calling of an election for the issuance of bonds and the subsequent issuance thereof, the levy and assessment of taxes, the renditions, the schedules, and the ownership of the respective lands, including Mrs. Anchor's. The pertinent allegations are fully· set out in the certificate incorporated in the opinion on certified questions. The following excerpt therefrom is set out as showing the basis of the tax levy, and the then status of the district's bonded obligation:

"The land is situated in the water improvement district and approximately 200 acres was classified by plaintiff's board of equalization as irrigable land, and approximately 100 acres as non-irrigable land, and was included in the rolls made up by the board as such; and thereafter in the year 1923 bonds in an aggregate sum of $1,525,000.00 were issued and sold by the plaintiff on an equitable benefit basis, according to which there was an aggregate assessment of $35.25 for each acre of irrigable land in the district and $1.00 an acre on all non-irrigable land. The assessments so levied on all irrigable lands in the district were at the rate of $3.50 per acre per annum, of which $2.45 was set apart for the payment of all accrued interest and for the retirement of the bonds, and $1.05 for the maintenance and operating expenses of the district; and 7 cents per acre per annum on all non-irrigable land within the district as an incidental benefit thereto, of which amount six cents should be applied to the payment of interest on the bonds and one cent on the principal of the bonds; * * * (that) the assessments levied and all statutory requirements necessary to such levy were duly and legally complied with, including service of notice to Mrs. Anchor, who failed to appear and contest the inclusion of her land in the district, or to resist the assessments made, and who thereafter failed to take any steps to have her land withdrawn from the water improvement district, as provided in articles 7646 to 7648, inclusive, Rev. Civ. Statutes of 1925. * * * According to further allegations the bonds that were issued by the district, in the sum of $1,525,000.00 were duly approved and validated in the District Court of Wichita County and in the Court of Civil Appeals for the Second Supreme Judicial District of Texas, and, after being so approved, were sold."

The petition also contains allegations to the effect that subsequent to the adoption of the equitable benefit basis plan of taxation by the district its board of equalization duly exam-

ined the rendition rolls and corrected and certified the same as required by law.

The sole question now remaining for determination, in view of the opinion on certified questions and that of the Court of Civil Appeals written pursuant thereto, is the question raised by the assignment on which the writ was granted. Briefly and concretely stated it is whether the judgment arrived at by calculating the tax on part of the land at one sum per acre and adding thereto the amount calculated on the remaining part at another sum per acre, and foreclosing the lien against the entire tract as a unit, is fundamentally erroneous.

It appears from allegations of the water district's petition that the land is described as one tract "containing 300.56 acres of land," the "metes and bounds" description of which is set out as proceeding from the beginning point, thence around the entire tract to the place of beginning.

3   The cases relied upon by counsel for Mrs. Anchor as supporting the contention made on her behalf that the judgment is fundamentally erroneous, relate to the now settled law that the tax lien against landed property attaches to each separate tract or parcel for its own taxes, and that each tract stands as security for only the portion of the tax assessed against it. Richey v. Moor, 112 Texas 493, 249 S. W. 172; State Mortgage Corporation v. Affleck, (Com. App.) 51 S. W. (2d) 274. If it had been made to appear upon the trial that the land in question had been subdivided into distinct tracts and carried on the tax rolls of the district as such, a different question would be presented. It neither appears nor is claimed that such is the case.

In Holt v. Wichita County Water Improvement District No. 2, (Com. App.) 63 S. W. (2d) 369, relied upon chiefly by counsel for Mrs. Anchor, Holt originally owned two tracts of land. Following their incorporation in the district they were subdivided into thirty-nine lots, one tract into thirteen and the other into twenty-six, and for the years involved each separate lot was separately rendered and assessed for taxes. Commissioner (now Justice) CRITZ, speaking for the Commission, says:

"It appears from the tax rolls offered in evidence that the district accepted such rendition, and carried each lot on its rolls for its own taxes. In this connection, as already stated, the rolls show the amount of taxes assessed against each separate lot. We think such a record shows, as a matter of law, that the tax liens should have been foreclosed as against each

lot for its own taxes, and that the district was not entitled to blanket liens on all of the lots in each original acreage tract."

4 Only one tract of land is involved in the present case. No subdivision thereof into separate tracts appears of record, or is claimed. It was a simple matter in arriving at the amount of the judgment to calculate the amount of the tax against the irrigable acres in the tract at the rate of $3.50 per acre, and add thereto the amount accrued against the nonirrigable acres at seven cents per acre. The method would be simple and workable and in accord with the established principle referred to, even if several tracts were involved and some contained entirely irrigable acres, some entirely nonirrigable acres and some a definite number of acres of each kind.

The principle that each tract of land is a unit for taxation purposes is not violated by using the method employed in the present case in arriving at the judgment.

5 The Court judicially knows that where both irrigable and nonirrigable lands comprise the acreage of a single tract the two kinds may be so intermingled as to make it impracticable, if not impossible, to segregate the different portions thereof as to irrigability into separate tracts separately described by metes and bounds.

The Court was careful to point out in the Holt case that "there may be cases where equity would decree a blanket foreclosure of the tax liens on lots separately rendered." As was there stated, however, we have no such case here.

6 It appears that due notice was given Mrs. Anchor of the proposed classification of her land at the time it was made, and that she did not protest. Since she was not denied due process of law, this Court is now without power to inquire into the question of benefits.

The judgment of the trial court and that of the Court of Civil Appeals rendered pursuant to the holding on questions certified, are affirmed.

Opinion adopted by the Supreme Court March 24, 1937.

Rehearing overruled May 12, 1937.