THE STATE OF TEXAS V. MAURITZ-WELLS COMPANY ET AL.

No. 8129. Decided November 24, 1943.
(175 S. W., 2d Series, 238.)

*Gerald C. Mann,* Attorney General, *Woodrow Edwards* and *L. P. Lollar,* Assistants Attorney General, for petitioner.

The Court of Civil Appeals erred in holding that the State did not have a prior lien for unemployment compensation taxes over unsecured creditors out of the fund held by the Humble and distributed by the judgment of the trial court. North British & Mer. Ins. Co. v. Klaras, 222 S. W. 208; Friedman v. American Surety Co., 137 Texas 149, 151 S. W. (2d) 570; Peerless Carbon Black Co. v. Sheppard, 113 S. W . (2d) 996; Buchanan v. Spencer Lbr. Co., 134 S. W. 292.

*Andrew, Kelley, Kurth & Campbell,* and *Homer Mabry,* (for Harvey Lumber & Supply Co.), *Baker, Botts, Andrews & Wharton* and *L. G. Zinnecker,* (for Travellers Ins. Co.), all of Houston, and *Cullen B. Vance,* of Edna, for respondents.

The Court of Civil Appeals did not err in its holding that the State was an unsecured creditor, as the action was neither one of insolvency nor was it a distribution or legal dissolution of the assets of a business firm. In re Brannon, 62 Fed. (2d) 959, and cases cited in the opinion.

MR. JUSTICE SHARP delivered the opinion of the Court.

The Mauritz-Wells Company sued the Tyler Construction Company to recover a debt of approximately $1,200.00, and in connection with the suit sued out a writ of garnishment against the Humble Oil & Refining Company. The Humble Oil & Refining Company answered that it owed Tyler Construction Company $14,887.06, but, because numerous creditors of the Tyler Construction Company were claiming the fund, it filed a bill of interpleader, in which it asked that various parties be brought into the suit, in order that the Humble Oil & Refining Company might not run the risk of double liability. Humble Oil & Refining Company disclaimed any interest in the fund, and prayed that the parties be required to interplead and have their rights to participate in the fund determined. Among the parties named in the bill of interpleader was the Texas Unemployment Compensation Commission. In its petition of intervention the State asserted that the Tyler Construction Company owed contributions under the Unemployment compensation Act in the amount of $1,272.15, which amount was claimed to be a lien on all property of the Tyler Construction Company by virtue of Article 5221b-12 (f), Vernon's Annotated Civil Statutes. Certain of the impleaded parties were awarded the status of secured creditors by the judgment of the trial court, and were paid in full. There remained enough of the money paid into the registry of the court by the Humble Oil & Refining Company to pay the claim of the State in full, if it were paid before the unsecured creditors. However, the trial court decreed that the State oc-

cupied the position of an unsecured creditor, and that all of the unsecured creditors should share the pro rata in the remainder of the fund. Although the Tyler Construction Company failed to answer in the suit, or to set up any defense or claim to the fund, there is no evidence in the record that it is insolvent or has ceased to operate. The State excepted only to that portion of the trial court's judgment refusing its priority over the claims of the unsecured creditors. Upon appeal by the State alone to the Court of Civil Appeals of the First Supreme Judicial District, the judgment of the trial court was affirmed. 170 S. W. (2d) 625.

■ It has been held that the claim of the State for contributions under the Unemployment Compensation Act is for taxes other than ad valorem taxes. Friedman v. American Surety Co., 137 Texas 149, 151 S. W. (2d) 570; Lally v. State (Civ. App.), 138 S. W. (2d) 1111. The contention of the State in this case is not that it is entitled to a lien, but to a priority over the claims of the unsecured creditors of the Tyler Construction Company. Said contention is based upon two statutes, Article 5221b-12 and Article 7269, Vernon's Annotated Civil Statutes. Article 5221b-12 reads in part as follows:

"(f) All contributions, penalties, and interest due by any employer to the fund shall become a lien upon all the property both real and personal of any employer, used by such employer in performing or aiding in the performance of the service which his employees have contracted to perform on his behalf. Such lien shall attach at the time any contributions or penalties or interest become delinquent as provided herein."

"(i) Priorities under legal dissolutions or distributions: In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this state, including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition or similar proceedings, contributions then or thereafter due shall be entitled to the same priority as is now accorded by the General Laws of the State of Texas to other tax claims."

Article 7269 reads as follows:

"In all cases where a taxpayer makes an assignment of his property for the payment of his debts, or where his property is levied upon by creditors, by writs of attachment or otherwise, or where the estate of a decedent is or becomes insolvent, and the taxes assessed against such person or property, or against any of his estate remain unpaid in part or in whole, the amount of such

unpaid taxes shall be a first lien upon all such property; provided, that when taxes are due by an estate of a deceased person, the lien herein provided for shall be subject to the allowances to widows and minors, funeral expenses, and expenses of last sickness. Such unpaid taxes shall be paid by the assignee, when said property has been seized by the sheriff, out of the proceeds of sale in case such property has been seized under attachment or other writ, and by the administrator or other legal representative of decedents; and, if said taxes shall not be paid, all said property may be levied on by the tax collector and sold for such taxes in whomsoever's hands it may be found."

■ The Court of Civil Appeals correctly held that Article 5221b-12 does not apply to a stakeholder's suit. It also correctly held that such statute applies to proceedings which contemplate the winding up of affairs of a business, whether corporate or unincorporated; and that the "distributions" described in such statute are only such as are ordered in (1) receiverships, (2) assignments for benefit of creditors, (3) adjudicated insolvency, (4) composition, and (5) similar proceedings. The Court of Civil Appeals correctly held that a garnishment proceeding which impounded the funds, and where the garnishee brought in claimants asserting conflicting rights as to priority of payment out of that particular fund, was not a distribution within the meaning of the statute. Article 5221b-12 (i). This was not a distribution of an employer's assets, but was merely the determination of the priority of right to payment out of a particular fund. The statute does not deal with the priorities as to a particular fund, but deals with distribution of an employer's assets, which necessarily means a distribution of all of the employer's assets, other than exempt property.

■ This is made plain when the entire statute is read, because it refers to receiverships, assignments for the benefit of creditors, adjudicated insolvency, composition, or similar proceedings, as these deal, not with a few of the assets, but with all of the assets, other than exempt property. These proceedings generally have the effect of relieving the debtor from the payment of further sums. In the present instance each of the creditors, including the State of Texas, was given a judgment against the debtor for the payment of his respective claim. The distribution referred to in this statute is a distribution of an employer's assets, and not merely a determination as to who has a prior right to a particular asset. This contemplates a distribution of all of the assets. This proceeding did not constitute a distribution of this employer's assets, because, as shown by the proof, there were other

assets. In addition to this, Article 5221b-12 (f) gives the State a lien on this other property by which the State can secure its money.

It is shown by the record that the Tyler Construction Company had equipment that had been used in its operations which might have been impressed with a lien in favor of the State, but the reason for not following that procedure is not given.

Many other States have Unemployment Compensation Acts which have provisions similar to subsection (i) of the Texas Act, here in controversy. Arizona Code Ann. (1939), sec. 56-1014(c) ; Alabama Code (1940), Title 26, sec. 241; New York Labor Law, sec. 522(6) ; South Carolina Code (1942), sec. 7035-94(f) ; South Dakota Code (1939), sec. 17.0826; Remington's Washington Rev. Stat., (Supp. 1941), sec. 9998-114m. So far as we have been able to ascertain, the question presented in this case has not been passed upon by any court. It is held in some cases that contributions under Unemployment Compensation Acts are entitled to priority as taxes under the Federal Bankruptcy Act. (U. S. C. A. Sec.1) United States v. New York, 315 U. S. 510, 62 Sup. Ct. 712, 86 L. Ed. 998; Re William Akers Co., 121 Fed. (2d) 846, 135 A. L. R. 1503. Even though that priority is based upon the fact that the contributions are held to be taxes, and thus entitled to the same priority as other taxes, it is reasonable to suppose that the Legislature intended by subsection (i) to provide a similar priority in insolvency proceedings in the State courts. A consideration of that part of subsection (i) which says, "In the event of any distribution of *an employer's assets* pursuant to an order of any court * * * (italics ours) we think shows that it applies only when all of an employer's assets are being distributed. In order to hold that the statute applies to the case before us, we would have to read the word "part of" into the text immediately prior to the words "an employer's assets."

It seems plain that the clause "including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition or similar proceedings," operates as a limiting clause upon the first part of the statute above quoted. It is a settled rule that the express mention or enumeration of one person, thing, consequence, or class is equivalent to an express exclusion of all others. Bryan v. Sundberg, 5 Texas 418; Georgian Oil Corp. v. Chemical Process Co. (Civ. App.), 151 S. W. (2d) 280; City of Corpus Christi v. McMurrey (Civ. App.), 90 S. W. (2d) 868; Harris County v. Crooker, 112 Texas 450, 248 S. W. 652; Seibert v. Richardson, 86 Texas 295, 24 S. W. 261. Neither a garnish-

ment nor an interpleader constitutes a legal dissolution or distribution within the contemplation of the statute. Although no opinion is expressed as to whether this case would come within the terms of the statute if the insolvency of the debtor were made out, it will be noted that the common denominator in the listed proceedings under subsection (i) is the insolvency of the employer. It would seem to follow that the minimum requirement for a case to come within the term "or similar proceeding" would be a showing that the debtor is insolvent.

It should be remembered, in this connection, that subsection (f) of Section 12 gives the State an express lien on all the property used in the employer's business, and provides that the lien shall attach at the time the contributions become delinquent. It is easy to imagine a case where the State would have a prior lien on the equipment of an employer, and other parties would have junior liens upon the property. It would be palpably unjust to allow the State to forego its lien and obtain a priority in a fund being distributed to unsecured creditors. The Court will not attribute to the Legislature an intention to work an injustice. Lacey v. State Banking Board, 118 Texas 91, 11 S. W. (2d) 496; State v. Hogg, 123 Texas 568, 70 S. W. (2d) 699; 39 Tex Jur., 224.

The State vigorously urges that the instant case is in practical effect an insolvency proceeding. The testimony of the witness Holmes, which is all the testimony bearing on this question, relied upon by the State to establish the fact that the Tyler Construction Company had ceased to operate, is set out in part below:

"Q. Do you know whether or not they are still in existence or in business operating?

"A. I don't believe. I have not been able to locate any of them.

\*     \*     \*     \*     \*     \*

"Q. Do you know whether or not they have ceased to operate?
"A. I don't know."

It will be noticed that although the State attempted to elicit testimony that the Tyler Construction Company had gone out of business, the witness admitted that he did not know whether it had ceased to operate. Since Holmes was the only witness to testify on the trial, it is obvious that the State's contention that this is a virtual insolvency proceeding is unsupported by the record. It is contended, in effect, that this Court should take judicial notice that the Tyler Construction Company is insolvent, because of the failure of the Company to answer or assert any

sort of claim to the fund here involved. The mere statement of that argument serves to refute it.

Since the evidence shows that the Tyler Construction Company had machinery and equipment used in its work, and said equipment is not involved or accounted for in this action, we hold that this proceeding is not a "distribution of an employer's assets," within the contemplation of subsection (i).

This brings us to the contention by the State that Article 7269 alone gives the State a priority over the unsecured creditors of the Tyler Construction Company. It is admitted by the State in its application for writ of error that it has no lien on money belonging to a delinquent employer; but it is contended that Article 7269 creates a priority in favor of the State when funds belonging to a delinquent employer are levied upon by a writ of garnishment.

■ Since the enactment of Article 7269 the courts have in many cases held that the State's lien for taxes is only on the property on which the State is given a lien. Richey v. Moor, 112 Texas 493, 249 S. W. 172; Anchor v. Wichita County Water Improvement District No. 2, 129 Texas 285, 103 S. W. (2d) 135, 112 A. L. R. 70; 40 Tex. Jur., p. 207, sec. 147. If Article 7269 were given the construction contended for by the State, it would follow that each time an execution or writ of attachment is levied on one piece of property belonging to some debtor, such levy would give the State a lien on the property levied on for taxes due on other property. This statute does not have any such meaning, and we would not be justified in giving it such a construction. Article 7269 does not purport to provide for a priority for taxes. It merely creates a lien upon the happening of specified events; and in this case the State is not insisting on a lien for the contributions due. Aside from the foregoing, there is a controlling reason why Article 7269 does not apply to create a lien for contributions under the Unemployment Compensation Act. In the case of State v. Wynne, 134 Texas 455, 133 S. W. (2d) 951, this Court had before it the questions whether the lien provided for to secure the payment of the motor fuel tax was constitutional and prior to a claim of a mortgagee and the United States. In the course of the opinion it was said: "It will be observed that the assessment and collection of taxes arising under Article 7065a are different from the assessment and collection of taxes under the general statutes regulating the assessment and collection of taxes. See Title 122, Revised Civil Statutes, * * *." 134 Tex. 455, 473, 133 S W. (2d) 951, 961. Where a special taxing statute provides its own method

of assessment and collection, the general statutes are not applicable.

When a particular taxing statute provides its own lien provisions and priority provisions, it would create confusion to hold that the general provisions of the statutes are also applicable to that tax. The very completeness of the taxing scheme .as set out in the provisions of Article 5221b-12 refutes any contention that the Legislature intended that the provisions of Title 122 of the Revised Civil Statutes should have any application to the case at bar.

The argument that the case of Shaw, Banking Commissioner, et al v. U. S. Fidelity & Guaranty Co. (Com. App.), 48 S. W. (2d) 974, 83 A. L. R. 1113, is controlling, must be overruled. In that case Judge Leddy merely said that the State, by its adoption of the common law, succeeded to the sovereign right to have its claims paid first out of the estate of an insolvent debtor.

The judgments of the trial court and Court of Civil Appeals are affirmed.

Opinion delivered November 24, 1943.