## FOLEY v. CURRIE.

### No. 14700.

Court of Civil Appeals of Texas.
Fort Worth.

July 6, 1945.

Rehearing Denied Sept. 14, 1945.

Napier & Napier, of Wichita Falls, for appellant.

C. K. Walsh, of Wichita Falls, for appellee Paul W. Currie.

Smoot & Smoot, of Wichita Falls, for appellee H. H. Hatfield.

Carrigan, Hoffman & Carrigan, of Wichita Falls, for appellee Stephens & Truitt Lumber Co.

SPEER, Justice.

This appeal had its origin in an action filed by Paul W. Currie on June 15, 1944, against W. B. Featherston, C. H. Foley, H. H. Hatfield, and O. G. Stephens and George W. Truitt, the last two alleged to compose a co-partnership, known as Stephens-Truitt Lumber Company. Currie sought damages, specific performance of a contract of sale of real estate and to remove cloud from the title of his land as against all defendants; it was alleged that the cloud on his title consisted of a purported mechanic's lien claimed by Foley. He alleged that the claimed lien was void, but that it cast a cloud upon his title which had previously caused him to miss a sale in which he would have made a profit of several hundred dollars. Plaintiff Currie attached to his petition the purported materialman's lien as attempted by Foley to be fixed against the property in controversy.

Defendant Foley answered plaintiff Currie's petition by general denial and a cross-action filed February 5, 1945, seeking recovery of $245 against defendant Hatfield and Stephens and Truitt composing the partnership lumber company, for sand and gravel furnished by Foley to Hatfield a subcontractor under the lumber company alleged to be the general contractors for improvements placed on the lots in controversy. That the sand and gravel was furnished to Hatfield between September 10, 1941, and December 1, 1941, for use in the construction of said improvements. Foley alleged that an itemized list of materials furnished was attached to his petition in cross action. (However, no such list appears in the record.) That Hatfield promised in writing to pay for said material as soon as funds were available from the Federal Housing Administration; that he presented his written contract to the lumber company and Stephens and Truitt, owners of the Lumber Company, promised to advise him (Foley) when the funds were available and that they would protect cross-plaintiff's interests therein; that the partnership failed to notify cross-plaintiff when the funds were available but paid them out to Hatfield and others; that he relied upon the promises of the lumber company. Foley alleged that his written contract (with Hatfield) "consisted of an itemized statement of the account upon which the said Hatfield inscribed his 'O.K.' and signed his name." He alleged in one paragraph that his itemized account was attached to his petition, but in another paragraph he said the itemized account bearing Hatfield's O.K. and signature was in the possession of the lumber company and gave notice to produce it. The account does not appear in any of the pleadings. There are allegations in the cross-action "That on the ——— day of ——— 1942" Foley filed in the office of

County Clerk of Wichita County, his affidavit and account for the purpose of establishing his materialman's lien. Plaintiff Currie attached to his petition an alleged copy of the affidavit filed by Foley in an effort to fix his lien; there is no account attached to the affidavit; the instrument appears to have been filed with the clerk on May 19, 1942. No complaint is made by any party as to the form of said affidavit in regard to failure of Foley to sign and subscribe same, nor to the nature of the Notary Public's jurat. Cross-plaintiff prayed for judgment against Hatfield, Stephens and Truitt for his debt and for a foreclosure of his asserted materialman's lien on the property in controversy, as against all adversely interested parties.

Hatfield, Stephens and Truitt (the last two constituting the partnership) urged special exceptions to the sufficiency of Foley's cross-petition against them: (a) Because same showed on its face that any indebtedness claimed by Foley was barred by the statutes of two years limitation; (b) because the asserted claim of Foley that Stephens and Truitt agreed to protect him and his interest when the money was available from F.H.A. was an effort to hold them upon an oral promise to answer for the debt of another and was in violation of the Statute of Frauds.

The original plaintiff Currie did not except to any part of Foley's cross-action pleadings but apparently relied upon his allegations that the asserted lien was void for the reasons shown in his original pleadings.

All parties appeared at the trial and upon a hearing of the special exceptions to Foley's cross action presented by Featherston, Hatfield, Stephens and Truitt, they were sustained; the court found in the judgment that the petition in cross action did not allege any fact showing the existence of any mechanic's and materialman's lien, but on the contrary shows that no such lien ever came into existence.

The judgment further recites in substance that a jury being waived and after hearing the evidence the court finds for Paul W. Currie and defendant W. B. Featherston removing cloud from the title to the lots previously described in the judgment, and denying Foley any recovery on his cross-action; recovery was denied Currie for his damages claimed and that all other relief prayed for by any of the parties was denied. Foley excepted to the judgment, gave notice of and has perfected this appeal.

In Foley's assigned errors and points he presents (1) error of the court in holding that Foley's petition on its face showed that his claim against Hatfield, Stephens and Truitt was barred by limitation; (2) error in holding that Foley's petition showed on its face that his materialman's lien was barred by limitation, and (3) error of the court in holding that no written contract between Foley and Hatfield was created by the itemized account upon which Hatfield entered his O.K. and signed same.

Appellant (Foley) presents the above assigned errors together and we feel justified in treating them in the same way.

It will be noted that after the court had sustained special exceptions urged by some of the defendants to appellant's asserted cause of action for debt because of limitations, a trial was had to the court which obviously involved Currie's contention that appellant's asserted materialman's lien was void. There is no statement of facts in the record, and we must presume that the evidence offered supported the judgment entered whereby the court found that appellant had no lien on the property and removed the cloud created by the asserted lien. Emergency Clinic and Hospital v. Continental Inv. Co., Tex.Civ.App., 41 S.W.2d 640, writ refused; Lewis v. Lewis, Tex.Civ.App., 125 S.W.2d 375, writ refused; Anchor v. Wichita County Water Improvement Dist. No. 2, 129 Tex. 70, 103 S.W.2d 135; Smith v. Higginbotham, 138 Tex. 227, 158 S.W.2d 481, and cases there cited. It is unnecessary for us to speculate upon what might have been proved under the pleadings of plaintiff Currie and this appellant Foley. As between these two parties the issue of whether or not Foley had a valid Materialman's Lien was squarely before the court. Several things could have established Currie's contention, and the judgment of the court that the purported materialman's lien was void and never did exist. The judgment would have been supported by proof that: (1) The affidavit and account as provided by Article 5453, R.C.S., Vernon's Ann.Civ.St. art. 5453, were not timely filed with the County Clerk; (2) no itemized statement of the account accompanied the affidavit; (3) no written notice of the account was given to the owner of the improvements. Foley did not allege in his cross action that either of these prerequisites had been complied

with to fix his lien and it may be inferred that he could not and did not offer evidence in support thereof in making his defense to Currie's suit against which he defended his rights under a general denial.

■ Appellant's cross-action against Hatfield, Stephens and Truitt for debt does not necessarily depend upon his having a materialman's lien on Currie's property and is controlled by the statutes of limitation. As above indicated, the court sustained special exceptions to appellant's cross petition upon the theory that his pleadings disclosed that his debt was barred by limitations; and as against Stephens and Truitt, disclosed that their alleged liability was in violation of the Statute of Frauds. We have concluded that appellant's attempt to hold Stephens and Truitt liable under their oral promise to protect appellant's interest in the matter is in violation of Section 2, Article 3995. There are so many cases cited under this article in Vernon's Annotated Civil Statutes that we think it unnecessary to select and cite a limited number. The special exception was properly sustained.

It will be noted by what we have said about the nature of appellant's assignments of error that he does not mention the sustaining of exceptions as being error but he contends "that the suit was grounded upon a written contract which consisted of an itemized statement of the account upon which H. H. Hatfield, the primary obligee, wrote his 'O.K.,' and the trial judge held that a written contract was not thereby created."

This contention is material in arriving at whether or not appellant's pleadings disclosed that his debt was barred by limitations of two years. He alleged that he furnished the material to Hatfield between September 10, 1941, and December 1, 1941. He filed his suit in form of a cross action on February 5, 1945.

It is reasonably certain from the pleadings that appellant sold the material to Hatfield upon an oral contract, and apparently, at a subsequent time made a statement of the account; just what the "statement" contained we do not know; there is nothing in the pleadings to indicate that there was anything in it other than an itemized statement of what appellant had sold to Hatfield. When presented to Hatfield he placed his "O.K." on it and signed it. Appellant pleads that this instrument constituted a written contract and complains because

the trial court found to the contrary. There is no contention made by appellant that the instrument contained any language evidencing an offer to sell and one of purchase or promise to pay; these things must of necessity have existed by parol agreements prior to the presentation of the "Statement." It is not contended that the statement contained the essential elements of a contract such as the date when made, a promise to pay, the time payment would be made nor the length of time a contract between the parties would last.

■■ Under authority of Baker v. Hanchett, Tex.Civ.App., 134 S.W.2d 407, we are led to believe and so hold that the instrument did not constitute a contract in writing controlled by the four years statute of limitations, Vernon's Ann.Civ.St. Art. 5527, but was no more than a confirmation of an already existing oral contract and debt, controlled by the two years statute of limitations. In the cited case there were letters passing between the parties, apparently after a previous oral contract had been made; it was held that a written confirmation of an already existing oral contract is not a written contract and that the indebtedness accruing by virtue of the oral contract was barred by the two years statute. Sec. 4, Art. 5526, and cases cited in that opinion.

In Bailey-Moline Hardware Co. v. Modern Woodmen of America, Tex.Civ.App., 89 S.W.2d 246, plaintiff had sold merchandise and gave to the buyer "sales slips" which contained such data as the identity of the salesman, the articles sold, that the sale was on credit and the signature of purchaser's agent to whom the articles were delivered. This court held that such instruments did not constitute a written contract between the parties, but was an oral one, controlled by the two years statute of limitations. In a somewhat similar situation we found it unnecessary to determine but expressed doubt if a written contract was made and followed the above holding in Gourley v. Iverson Tool Co. et al., Tex.Civ. App., 186 S.W.2d 726 in which case writ of error was refused, want of merit.

The petition in cross-action does not disclose when, nor under what conditions, Hatfield annexed his "O.K." and signature to appellant's statement of the account. We hold that such acts did not amount to a written contract bringing the action under the four years statute of limitation. Hatfield's "O.K." and signature on the state-

ment of appellant's account carried none of the elements of a written contract. In many respects the "O.K." of one party has a well defined meaning in this country. True the conditions under which the expression is used may change its meaning from what it would be under other circumstances. We observe that under the pleadings of appellant he presented Hatfield with a "statement" of his account; when Hatfield attached his O.K. and signature it meant no more nor less than Hatfield's approval of the correctness of the account; he said by his acts, "what I have O.K.'d is correct." There are many theories as to the derivative of the expression. The humorist Seba Smith declared that Andrew Jackson originated the expression by marking the official documents which met his approval with an "O.K.," meaning that it was "Orl Korrect." (Double Day, Facts—New Concise Pictorial Encyclopedia.) (It may be doubted if humorist's assertions are correct.) Our courts have also spoken on the subject, substantially as above indicated. See Rosser v. Cole, Tex.Civ.App., 226 S.W. 510, writ dismissed; 46 C.J. page 1088. Granting that the "statement" of his account alleged by appellant in his cross-action had borne the language above quoted instead of the O.K. of Hatfield, still it would not become a written contract for the reasons above pointed out. It carried no promise of any kind binding upon either Hatfield or Foley.

Appellant cites and relies upon the case of International Filter Co. v. Conroe Gin, Ice & Light Co., Tex.Com.App., 277 S.W. 631. That case involved a fully written proposal by one and an acceptance in writing by the other; both agreed by the terms of the instrument that it should become a contract when approved by an executive officer of the selling company whose place of business was in another state. The executive officer thereafter placed his "O.K." thereon and signed it. The court held it to constitute a written contract. The contract being in writing needed only the approval of the executive officer to make it complete. We think the rule there announced is distinguishable from the instant case; here we have no promise to sell, perform a duty, or furnish materials on the one part nor an acceptance, agreement to purchase nor promise to pay anything at any time or place by the other party.

Based upon the record before us and the cited authorities, the assigned errors will be overruled and the judgment of the trial court affirmed, and it is so ordered.