CASH INVESTMENTS, INC., Appellant,

v.

### CLINT INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 08–95–00319–CV.

Court of Appeals of Texas, El Paso.

Nov. 21, 1996.

Rehearing Overruled March 12, 1997.

---

Steven L. Hughes, Mounce & Galatzan, El Paso, for Appellant.

Raymond R. Gray, Ray Wood & Fine, Austin, Guy N. Fields, III, Fields & Healy, El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a declaratory judgment. Appellee foreclosed on several properties for non-payment of taxes. Appellant purchased the properties at a tax foreclosure sale. Because Appellee refused to release its liens on the properties, Appellant sued for declaratory relief to determine the validity of its title. The trial court declared that the tax foreclosure sale and subsequent sheriff's deed were void. We reverse and remand in part, and reverse and render in part.

## I. SUMMARY OF THE EVIDENCE

The facts are undisputed. From 1980 to 1989, Appellee, a school district, assessed taxes against six tracts of land within its boundaries ("the properties"). Certain of those taxes were not timely paid and became delinquent. Consequently, in 1988, Appellee brought suit ("the tax suit") to collect the delinquent taxes on the properties. The total taxes, penalties, and interest for the properties which Appellee sought to recover by the tax suit were as follows:

| | |
|---|---|
| Tract 1: | $13,243.65 |
| Tract 2: | 16,182.81 |
| Tract 3: | 119.71 |
| Tract 4: | 30,582.63 |
| Tract 5: | 3,576.49 |
| Tract 6: | 4,177.38 |
| | $67,882.67 |

**1.** At oral argument, Appellee conceded that:

In 1990, Appellee obtained a judgment in the tax suit for recovery of the taxes and for foreclosure of its tax liens ("the judgment"). The tax suit judgment, drafted by Appellee and stating that the aggregate market value of the properties was $1,126,334, provided, in pertinent part:

IT IS ORDERED that an Order of Sale be issued by the Clerk directed to the Sheriff or any Constable of said County, commanding such officer to seize, levy upon, and advertise the sale of each of said properties, and sell the same to the highest bidder for cash, as under execution, provided that none of said property shall be sold to any party, other than a taxing unit which is a party to the suit, for less than the amount of the market value of the property ... or the aggregate amount of the judgment against the property in said suit, whichever is lower....

Thereafter, the district clerk issued an order of sale, also drafted by Appellee, containing similar language:

[N]one of said property shall be sold to the owner of said property directly or indirectly, or to anyone having an interest therein, or **to any party** other than a taxing unit **which is a party to the suit** for less than the amount of the adjudged value of the property or the aggregate amount of the judgment against the property in said suit.... (Emphases added).

Subsequently, the Sheriff levied upon the properties and published a notice of sheriff's sale.

In March 1991, the Sheriff conducted a tax sale of the properties by public auction. Appellee did not appear at the tax sale, although the Sheriff delayed the sale approximately thirty minutes in order to give Appellee an opportunity to appear.[1] Appellant made the highest cash bid of $360 for the

1) a school district's interest (is) protected by merely showing up and submitting a minimum bid, and

properties.[2] Upon receiving payment, the Sheriff sold the properties to Appellant and delivered a sheriff's deed for the properties.[3] It is undisputed that at the time of the tax sale and delivery of the deed, Appellant was not affiliated with any person who owned or held an interest in the properties.

Appellant purchased the properties subject to other delinquent taxes of the City and County of El Paso, and to all 1990 taxes. As of November 6, 1993, there were delinquent taxes, penalties, and interest of taxing units assessed against the properties, and to which Appellant's interest therein was subject, totaling $120,326.41.[4]

After the tax sale, Appellant repeatedly asked the tax assessor for the payment amount necessary for Appellant to make full payment of all non-Appellee taxes, penalties, and interest. Thereafter, the tax assessor gave written notice to Appellee about Appellant's tender and requested that Appellee release its tax liens. Appellee refused to release its liens, so the tax assessor would not accept Appellant's payment.

On November 10, 1992, Appellant sued for declaratory relief to determine the validity of its title. Appellee contended that the Sheriff should not have sold the properties to Appellant at the tax sale for an amount less than either the adjudged value of the properties ($1,126,334) or the aggregate amount of the judgment ($67,882.67). Appellant and the Sheriff deny that any such irregularity existed. The parties submitted the case to the trial court primarily upon written stipulations of fact, with only limited, uncontested testimonial and documentary evidence. The trial court adjudged that "the Sheriff's Sale of March 5, 1991, and the subsequent Sheriff's Deed, are void and no title shall pass to Plaintiff."

2) if the I.S.D. was there and bid, we wouldn't be here today.

2. At least five persons were present at the tax sale, with two persons bidding on the properties.

3. For reasons unclear in the record, the deputy conducting the sale accepted the bid of $360.

4. The properties were also subject to redemption. At the time the Federal Deposit Insurance Corporation ("FDIC") gave notice of redemption, the

## II. DISCUSSION

■ Appellant attacks the judgment of the trial court in seven points of error. In its first point of error, Appellant contends that the trial court erred "when it concluded that the tax sale and the deed were void and passed no title to Cash Investments, because Cash Investments was not bound by any minimum or sufficient bid requirement and could bid less than the market value or judgment amount against the properties."

As previously noted, the order of sale contained the following relevant language:

[N]one of the said property shall be sold ... **to any party other than a taxing unit which is a party to the suit** for less than the amount of the adjudged value of the property or the aggregate amount of the judgment against the property in said suit.... (Emphasis added).

The real gravamen of Appellant's complaint is that "party ... which is a party to the suit" cannot mean "anyone," as the trial court found. We agree.

Minimum bid requirements for orders of sale are set forth in TEX.TAX CODE ANN. § 33.50(b) (Vernon 1992), which provides:

[T]he order of sale shall specify that the property may not be sold to a person owning an interest in the property or to **any party to the suit,** other than a taxing unit, for less than the market value of the property stated in the judgment or the aggregate amount of the judgments against the property, whichever is less. (Emphasis added).

*Id.* As stipulated, Appellant did not own an interest in the properties and was not a party to the tax suit. However, the trial court, despite the unambiguous language of TEX. TAX CODE ANN. § 33.50(b), determined that

FDIC held an interest in a promissory note dated January 1, 1983 in the original principal amount of $900,000, with such note being secured by liens on the properties. In response to the notice, Appellant advised the FDIC that the cost of redeeming the properties would be $1,602.50, plus $2,000 in attorneys' fees. The FDIC thereafter declined to redeem the properties.

the Sheriff's sale and deed were void. We find this determination to be erroneous.

First, we find that the plain language of TEX.TAX CODE ANN. § 33.50(b) clearly requires the order of sale to restrict sales for a minimum bid to persons with an interest in the properties or who were parties to the tax suit. Quite simply, the statute does not prohibit the sheriff from selling the properties to **anyone,** save a taxing unit, for less than a minimum bid, as the trial court apparently concluded.

Perhaps the reason for the trial court's mistake was reliance on *State v. Rhodes,* 327 S.W.2d 701 (Tex.Civ.App.—Dallas 1959, no writ). In *Rhodes,* the City of Dallas filed suit to set aside and declare void a tax foreclosure sale and to cancel the sheriff's deed. The grounds alleged were that the sale and deed were contrary to TEX.REV.CIV.STAT.ANN. art. 7345b, contrary to the judgment entered by the court in the tax foreclosure suit, and contrary to the provisions of the order of sale issued by the court authorizing the sale.

The order of sale issued in *Rhodes* contained the following instruction to the sheriff:

> [N]one of said tracts shall be sold to the owner of said tract directly or indirectly or to anyone having an interest therein or to any party other than a taxing unit which is a party to this suit for less than the amount of the adjudged value of said tract or the aggregate amount of the judgments against said tract in said cause, whichever is lower.

*Id.* at 702–03. At the public auction, H.R. Fender was the high bidder with a bid of $80. The sheriff accepted Fender's bid and thereafter executed a sheriff's deed conveying the property to him.

The trial court rendered judgment in favor of the City of Dallas, setting aside the tax foreclosure sale, canceling the sheriff's deed to Fender, and ordering the Sheriff of Dallas County to return to Fender the $80 which he had paid for the property as highest bidder at the sale. In affirming the judgment of the trial court, the Dallas Court of Appeals interpreted TEX.REV.CIV.STAT.ANN. art. 7345b and declared the sale void "because the acceptance of Fender's bid of only $80 violated the terms of the court's judgment of foreclosure,

and the express directions of the order of sale." *Rhodes,* at 703.

■ TEX.REV.CIV.STAT.ANN. art. 7345b, § 8, no longer in effect, was the predecessor to TEX.TAX CODE ANN. § 33.50(b). TEX.REV. CIV.STAT.ANN. art. 7345b, § 8 provided that:

> No property shall be sold for taxes under decree in such suit to the owner of said property, directly or indirectly, or to anyone having an interest therein, or to any **party** other than the taxing unit which is a party to the suit, for less than the amount of the adjudged value aforesaid of said property or the aggregate amount of the judgments against the property in said suit, which ever is lower. (Emphasis added).

As previously noted, TEX.TAX CODE ANN. § 33.50(b) is in substantially the same language as TEX.REV.CIV.STAT.ANN. art. 7345b, § 8, except for the addition of "to the suit," to wit:

> [T]he property may not be sold to a person owning an interest in the property or to any **party to the suit,** other than a taxing unit.... (Emphasis added).

*Rhodes* interpreted the "or to any party ..." language in TEX.REV.CIV.STAT.ANN. art. 7345b, § 8 to mean that nobody (other than a taxing authority) could purchase the property for less than the judgment value or the adjudged value. However, the Legislature's addition of the language "to the suit" makes the *Rhodes* interpretation of limited value. We give effect to all the words of a statute and do not treat any statutory language as surplusage if possible. *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987); *Perkins v. State,* 367 S.W.2d 140 (Tex.1963). Moreover, it is a well settled rule of construction that the "express mention or enumeration of one person, thing, consequence, or class is equivalent to an express exclusion of all others." *James v. Brown,* 637 S.W.2d 914, 918 (Tex.1982); *State v. Mauritz–Wells Co.,* 141 Tex. 634, 639, 175 S.W.2d 238, 241 (1943). Thus, we believe that the trial court erred in finding that the order of sale and TEX.TAX CODE ANN. § 33.50(b) prohibited the sheriff from selling the properties to a third

party such as Appellant for less than the minimum bid.

■ In addition to the above, two other cogent factors serve to persuade us. First, the order of sale provides that "none of said property shall be sold ... to **anyone** having an interest therein, or to any party other than a taxing unit which is a party to the suit...." (Emphasis added). It is apparent to us that if "party" was intended to mean "anyone" in the second clause, the order of sale would have used that term as it did in the preceding clause. Second, we note that Appellee drafted the order of sale. In Texas, a writing is generally construed against its author to reach a reasonable result consistent with the intent of the parties. *Temple–Eastex Inc. v. Addison Bank*, 672 S.W.2d 793 (Tex.1984); *Tubb v. Bartlett*, 862 S.W.2d 740, 747 (Tex.App.—El Paso 1993, writ denied). Appellant should not be allowed to take advantage of any ambiguity in its own language.

Finally, Appellee contends that TEX.TAX CODE ANN. § 34.01(c)(Vernon 1992) provides that a third party bid is insufficient if it falls short of the minimum bid (i.e.—the lesser of the aggregate amount of the judgment against the property or the market value of the property). Section 34.01(c) provides, in pertinent part:

> If a sufficient bid is not received, the officer making the sale shall bid the property off to a taxing unit that is a party to the judgment for the aggregate amount of the judgment against the property or for the market value of the property as specified in the judgment, whichever is less.

TEX.TAX CODE ANN. § 34.01(c). We read Section 34.01(c) in light of the minimum bid requirements of TEX.TAX CODE ANN. § 33.50(b). As such, if the highest bidder is either a party to the suit or a person with an interest in the property, and the bid does not meet the minimum bid requirement, the bid is insufficient, and the property is sold to the taxing entity.[5] Accordingly, we sustain Appellant's Point of Error No. One.

In Points of Error Nos. Three and Four, Appellant contends that the trial court erred when it failed to find that (1) Appellee should waive all tax, penalty, and interest as to Appellant, and (2) Appellee was liable for all additional charges for the non-Appellee taxes. However, due to the trial court's incorrect conclusion that the sheriff's sale and deed were void, the trial court never addressed these issues. As such, these findings remain for the trial court's determination. Accordingly, we overrule Appellant's Points of Error Nos. Three and Four to the extent they seek rendition of judgment for the above-mentioned taxes, penalties, charges, and interest and sustain Appellant's alternative request for a remand on these issues. We do not reach the remaining points of error.

We reverse the judgment of the trial court in part, and reverse and render in part.

LARSEN, J., dissents.

LARSEN, Justice, dissenting.

I respectfully dissent. I would sustain the lower court's judgment that the sheriff's sale was void and no title passed to Cash Investments, as the sheriff did not comply with either the judgment of foreclosure or the order of sale in accepting Cash Investments' bid. *See State v. Rhodes*, 327 S.W.2d 701 (Tex.Civ.App.—Dallas 1959, no writ). The majority's holding means, effectively, that a taxing unit may not rely upon the plain language of a judgment and order to govern the terms of a sheriff's sale.

A valid judgment, execution *and* sale are required to pass title to property at an execution sale. *3–C Oil Co. v. Modesta Partnership*, 668 S.W.2d 741, 748 (Tex.App.—Austin 1984, writ ref'd n. r. e). The judgment of foreclosure and the order of sale establishes the sheriff's authority to sell, the manner of sale, and the terms of the sale. *See Volunteer Council of Denton State School, Inc. v. Berry*, 795 S.W.2d 230, 238 (Tex.App.—Dallas 1990, writ denied). If the sheriff acts

---

5. Appellee relies on *Danciger v. State*, 140 Tex. 252, 166 S.W.2d 914, 915 (1942), for the proposition that the deputy conducting the sale must sell the property to the taxing unit if the bids do not reach the amount of the delinquent taxes. *Danciger*, however, interpreted a statute which provided such treatment if there was "no bidder", and is thus distinguishable.

outside the authority thus conferred, the sale is void and no title passes. *Id.* That is exactly what occurred here.

Clint I.S.D. brought the foreclosure suit and obtained a judgment that states:

> [T]hat an Order of Sale be issued ... directed to the sheriff ... [to] sell ... to the highest bidder for cash, as under execution, *provided that none of said property shall be sold to any party, other than a taxing unit which is a party to the suit,* for less than the amount of the market value of the Property (as shown in the findings portion of this judgment) or the aggregate amount of the judgment. . . .

The Order of Sale issued pursuant to the judgment directs the sheriff to:

> [S]ell the same, to the highest bidder for cash as under Execution; provided, howeverer, *that none of said property shall be sold to the owner of said property, directly or indirectly,* **or** *to anyone having an interest therein,* **or** *to any party other than a taxing unit which is a party to the suit* for less than the amount of the adjudged value of the property or the aggregate amount of the judgment against ... the property.

I find no ambiguity in the phrase "any party other than a taxing unit which is a party to the suit." In both the judgment and the order of sale "taxing unit" is modified by "party to the suit," clearly identifying Clint I.S.D. as the only entity which may purchase for less than the minimum bid defined in the order. This minimum bid restriction applied to everyone else in the world, including Cash Investments. Moreover, the judgment and order of sale as written are not in conflict with TEX.TAX CODE ANN. § 33.50, nor should it be necessary to interpret the plain language of the judgment and order of sale in light of Section 33.50, as that statute creates a mandatory floor, but not a ceiling, for restrictions on transfer of property within a judgment and order of sale.[1]

Although Section 33.50(b) clearly requires a minimum bid from an interested party or owner of the foreclosed property, nothing there prohibits a court from imposing additional terms or conditions on the sale of foreclosed property. Nothing in the language of Section 33.50 calls for the conclusion that it is the only permissible requirement in an Order of Sale. I believe, therefore, that the language of Section 33.50(b) is irrelevant to the resolution of the controversy. Because the sheriff failed to follow the dictates of the order of sale and acted without authority in accepting a bid for less than the court determined minimum, the sale was void.

A close reading of *Rhodes,* 327 S.W.2d 701 clarifies this point. In *Rhodes,* a tax foreclosure sale was set aside when the sheriff sold property to a third party for less than the minimum bid required by the order of sale. *Rhodes,* 327 S.W.2d at 702. The order of sale instructed the Sheriff:

> [N]one of the tracts shall be sold to the owner ... directly or indirectly or to any one having an interest therein or to any party other than a taxing unit which is a party to this suit for less than the amount of the adjudged value ... or the aggregate amount of the judgments. *Id.*

The court understood the order of sale to mean that the minimum bid requirement was binding on everyone except a taxing unit that was a party to the suit. This instruction in the order of sale tracked the language of TEX.REV.CIV.STAT.ANN. art. 7345b § 8, (the predecessor to 33.50(b) TEX.TAX CODE ANN.) *Id.* at 703. Appellant in *Rhodes* argued that the language of Article 7345b, § 8 was directory rather than mandatory and could not authorize the setting aside of a tax sale or sheriff's deed. *Id.*

In upholding the lower court's decision, the court of appeals found that the *judgment of the court* and *the order of sale,* independent of the statute, imposed a minimum bid on all parties except the taxing unit which was a party to the suit and that:

> [T]he question whether Art. 7345b, § 8, V.A.C.S., is directory or mandatory is im-

---

1. Further, I believe the majority mistakenly applies a principle of contract law to the judgment here. Any judgment is the word of the *court,* not of the party who may have drafted its language. The principle of contract law that a writing is construed against its author has no place in the construction of an order of the court. An order of sale, as a writ of execution, is a process of the court from which it is issued. TEX.R.CIV.P. 622.

material in this case. The sale must be declared void because the acceptance of [the] ... bid violated the terms of the court's judgment of foreclosure, and the express directions of the order of sale ... the authority of the sheriff to pass ... title at a sale under foreclosure by decree of court rests upon the decree and the order of sale. If the decree and order of sale fail to authorize such a sale as the sheriff undertook to make, no title passes. *Id.*

Continuing, the court stated:

Where the sheriff sells to satisfy a judicial foreclosure of a tax lien, his authority is no more derived entirely from the statutes than when he sells under an ordinary execution. The valid judgment of a court of competent jurisdiction and a writ for the enforcement of the judgment are essential to confer on the sheriff the power to sell.

*Id.* at 704, *quoting Brown v. Bonougli,* 111 Tex. 275, 232 S.W. 490, 492. Thus, the foreclosure sale was not in compliance with the directions of the order of sale, and the trial court properly set aside the sale and cancelled the sheriff's deed. *Id.* Contrary to the majority's understanding, the *Rhodes* opinion never interpreted Article 7345. Rather, *Rhodes* held it was the violation of the *order* that made the sale void. The application of the statute played no part in determining the sale's validity. *Id.* at 703.

Similarly, the foreclosure suit brought by the Clint I.S.D. here contained a judgment of foreclosure and order of sale with language nearly identical to that in *Rhodes,* imposing a minimum bid on everyone, with the exception of the taxing unit. The sheriff violated the terms of the judgment of foreclosure and the order of sale in accepting Cash Investments' bid. For that reason, I would hold, as did the trial court, that the sale was not valid.

Finally, we should not lose sight of the impact the majority's decision will have on revenue collection in this State. The purpose of a taxing unit is to assess and collect revenues and the provisions of the Property Tax Code are merely tools to that end. *Syntax, Inc. v. Hall,* 899 S.W.2d 189, 192 (Tex.1995). The majority's ruling would severely limit a taxing unit's ability to carry out this purpose, as its interpretation of TEX.TAX CODE ANN.

§ 33.50 (Vernon 1992) would prohibit a taxing unit from requesting and obtaining a judgment and order of sale requiring minimum bids from third parties. I believe it defeats the purpose of Chapters 33 and 34 of the Tax Code if a taxing authority cannot rely on the plain language of a judgment of the court and the order of sale to fulfill its appropriate public function. It seems the majority would require the taxing authorities to rely on a warm body at a foreclosure sale to insure they obtain taxes owed. Without an explicit requirement from the legislature that the taxing unit have a representative physically present at every sheriff's sale (not a hefty burden on a small entity, but large and expensive burden on a large one), I would place more confidence in the language of a judgment and order of the court than the majority seems willing to vest.

I therefore agree with the trial court's finding that no title passed to Cash Investments as a result of the sheriff's sale here. I would also find that the court acted within its discretion in awarding attorney's fees to Clint. I would affirm.