## GOURLEY v. IVERSON TOOL CO. et al.

### No. 14665.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 23, 1945.

Rehearing Denied March 30, 1945.

728

Simon & Zimmerman and Simon & Simon, all of Fort Worth, for appellant.

Haddaway & Denny, of Fort Worth, for appellees.

SPEER, Justice.

Iverson Tool Co. and New Mexico Glycerin Co., both being corporations, as plaintiffs, sued Sam Weiner and W. J. Gourley, individually and as co-partners, and the First National Bank & Trust Co., of Tulsa, a national banking association, as defendants, seeking a judgment against Weiner and Gourley in the capacity sued, for $4,-055.18 in favor of the first named plaintiff and $6,574.07 in favor of the second named plaintiff, and for a foreclosure of mechanic's, materialman's, and contractor's liens against all of the three named defendants upon and against an oil and gas lease on a described 160-acre tract of land in Winkler County, Texas. This lease is referred to throughout the record as the Jenkins lease.

Insofar as is necessary to refer to the pleadings, plaintiffs' petition asserts that during all of the time involved in this suit the defendants Weiner and Gourley owned, jointly, the oil and gas lease subject to an overriding one-eighth interest in the seven-eighths leasehold, owned by Continental Oil Co., and that defendant Gourley owned a two-thirds interest and Weiner a one-third interest in said lease; that Weiner and Gourley contemplated the drilling of wells thereon for the production of oil and gas; that under an oral agreement between them, Weiner had charge and control of the development, management and operation of the lease for and on behalf of himself and his co-defendant Gourley; that each of the parties under said agreement and contract was obligated to pay his proportionate part of the expenses incident to the drilling of said wells and should participate in the profits from said joint enterprise and would share and be liable for any losses accruing therefrom, proportionately; that by virtue of their said contracts, agreements, and conduct they became partners therein and if not general partners then a partnership existed between them for mining purposes in the enterprise undertaken by them.

Allegations are made that defendant Weiner was to have control of the development, management, and operation of said leasehold property for and in behalf of himself and Gourley.

There are further allegations to the effect that during the period that wells were being drilled on said leasehold, Weiner, acting for said partnership, advised plaintiffs that it was the intention of said defendants to fully drill and develop such lease and that it would be necessary for him to purchase for said partnership, oil field supplies, tools, equipment, and labor to complete said development with the understanding at that time between the said Weiner and plaintiffs that the account should be permitted to run and that the amounts accruing thereunder should not mature until all of such material, tools, supplies and labor had been furnished and until such drilling program should have been fully developed. That such arrangement was agreeable to plaintiffs and plaintiffs did thereafter furnish material, tools, equipment and labor to the said Weiner for said partnership to the extent of the amount sued for herein, agreeing that said account should not mature nor become payable until the last of such tools, supplies and material had been furnished and the drilling program completed. Further allegations were made that the various items shown in their account are evidenced by a series of written memoranda, constituting agreements in writing whereby said defendants,

acting by and through Sam Weiner, agreed to pay to plaintiffs the amounts as shown therein.

Plaintiffs pleaded that the last of said tools, supplies, material and labor was furnished by them on September 7, 1941, and that by virtue of the agreement relating thereto with Weiner the whole of said account then and there became due and payable; that thereafter on December 29, 1941, plaintiffs filed the necessary affidavit, accompanied by an itemized account, in the office of the County Clerk of Winkler County, Texas (giving the volume and page numbers of its recordation) and that plaintiffs thereby fixed the materialman's lien against said lease and that said lien is first and prior to that of a lien held by the defendant Tulsa bank.

Further allegation is made that on September 20, 1941, Weiner sold and conveyed to defendant Gourley his undivided one-third interest in said oil and gas lease but that said conveyance was in all things subject to the liens held by plaintiffs as security for the payment of its said indebtedness.

Prayer was for judgment against Gourley and Weiner jointly and severally for the amounts shown to be due and payable to plaintiffs and for a foreclosure of the mechanic's and materialman's lien on the leasehold as against all defendants.

The record does not indicate that either of the defendants, Weiner or The First National Bank & Trust Co., of Tulsa, filed an answer to plaintiffs' petition and default judgment was rendered in favor of plaintiffs against them.

Defendant Gourley answered by general denial and a special denial of partnership, duly verified, and further by a plea of the two years' statute of limitations. And in connection with said plea of limitations it was alleged substantially that plaintiffs asserted mechanic's and materialman's lien was not valid because not filed within the period of time provided by law.

He further specially answered that Weiner drilled the wells and developed the leasehold as a general contractor and for an agreed price with him (Gourley) under a turnkey job by which Weiner would pay all expenses incident thereto and that he had paid Weiner in full all sums of money owing to Weiner for the drilling of said wells and furnishing the necessary material and labor therefor. He alleges that he was never notified by plaintiffs at any time prior to the filing by plaintiffs of their alleged mechanic's and materialman's lien of the existence of any indebtedness held by them or that plaintiffs were looking to him for payment of any sum.

Further answer was made that all of said material, supplies, and services furnished by plaintiffs were to the said Weiner only, and were billed by plaintiffs to the said Weiner, and the amounts thereof were due and payable on the 20th day of the month following the date of delivery of merchandise and performance of labor to and for the said Weiner.

Gourley denied that Weiner ever entered into any agreement with plaintiffs either in writing or otherwise whereby the time of payment for materials and services should be postponed from the customary time of payment until the last item thereof should be furnished or performed.

Gourley further answered that all of said indebtedness claimed by plaintiffs had been paid, in that when Gourley purchased the last one-third interest from Weiner, Gourley executed to Weiner his notes aggregating $5,000 as part of the consideration and said notes were assigned and delivered to plaintiffs by Weiner with the expressed instruction and agreement between the plaintiffs and Weiner that the proceeds of said note should be applied to the accounts for the material and services furnished and performed on the Jenkins oil and gas lease described in plaintiffs' petition; that plaintiffs violated said instruction and agreement to so apply said notes but did accept said notes and applied the same on an account owing by Weiner alone, and not upon plaintiffs' alleged account against the Jenkins lease. On these pleadings defendant Gourley sought to defeat plaintiffs' cause of action and recover his costs expended.

Trial was to a jury and judgment was entered on the verdict for plaintiffs for the amount sued for as against Gourley and Weiner jointly and severally. Foreclosure of the lien was ordered as against all three of the defendants. Gourley alone has appealed.

There are twenty-nine points of error assigned; several of which relate to kindred matters and will be discussed together.

■ First point complains because there was no testimony to warrant the submission of first special issue and because there was no testimony to support the answer. The first issue inquired if Weiner made an agreement with Iverson in the early summer of 1940 that "the indebtedness for labor and supplies furnished (by plaintiffs) on the Jenkins lease should not be due and payable until the last item of supplies and labor were furnished." The answer was "Yes." Plaintiffs had pleaded the matter in substantially the same language as that found in the inquiry. There is no contention that the finishing of the ninth well on the lease was not a complete development of the lease. As disclosed by the evidence, the last labor performed by one plaintiff was September 9, 1941, and the last materials by the other plaintiff were furnished on September 18, 1941.

The substance of the testimony by Iverson (manager of both plaintiffs) was that he knew Gourley and Weiner owned the Jenkins lease and that Weiner was developing it for the two; that Weiner had several other leases and plaintiffs had been selling him material and performing labor for him in connection with all his activities but that accounts were kept as against each lease; that the development of the Jenkins lease would require several wells, if production was found. That in the summer of 1940 plaintiffs agreed with Weiner that on each producing lease, his account could run along during the time he was developing and when a lease was developed, his account against that lease (including the Jenkins) should become due and payable when development was finished. No objection was made to the manner in which the issue was submitted by the court, and we think the testimony as a whole supports the jury finding.

■ Points two and three assert error of the court in entering judgment for plaintiffs without allowing a credit thereon of $5,000, the amount of two notes executed by Gourley to Weiner, when Weiner delivered the notes to plaintiffs. It is argued that since plaintiffs claimed that Gourley and Weiner were partners and the notes were given by Gourley to Weiner as a part of the purchase price of Weiner's interest, the notes became partnership property (if a partnership existed) and should have been applied upon the alleged partnership account. We think the premise is wrong, in that the notes represented the interest of

Weiner in the partnership and that the partnership as such had no interest therein. The sale of his interest in the partnership property by Weiner to Gourley terminated the partnership (32 Tex.Jur. 494, Sec. 173) and if Gourley had paid Weiner all cash for his interest, it could not be said that Gourley continued to have an interest in the money he had paid for the interest; likewise he had no interest in the purchase money notes. 32 Tex.Jur. 525, Sec. 197. In this connection it is argued by appellant (Gourley) that under the jury's answer to special issue 4 the proceeds of the two notes should have been applied by plaintiffs to their indebtedness against the Jenkins lease and the court erred in not allowing such credit before entering judgment. Special issue 4 inquired if Iverson (manager of plaintiffs) agreed with Weiner to accept Gourley's two notes and that same should be credited on plaintiffs' indebtedness. The answer was "Yes." The record discloses indisputably that Weiner owed plaintiffs about $18,000 on other accounts and that plaintiffs did credit those accounts with the notes so accepted. The issue referred to did not inquire if Iverson agreed to accept the notes as part payment of plaintiffs' account against the lease in question, nor did Gourley object to the submission of the issue as framed. There are other issues which did submit whether Weiner requested the application of the notes to the Jenkins lease account, and the jury found that he did not. The jury's answer to the issue complained of is sustained by the testimony; the amount of the notes was credited on "plaintiffs' indebtedness." Neither of the points presents error.

■ Fourth point asserts that there is an irreconcilable conflict between the answers to special issues 3 and 4, and for that reason, no judgment could be entered thereon. Issue No. 3 inquired if Weiner immediately prior to the time he sold his remaining interest in the lease to Gourley, told Iverson of such proposed sale, that he was taking two $2,500 notes from Gourley and inquired of Iverson, if he did so acquire those notes, would Iverson accept them as a credit on the indebtedness held by plaintiffs, and the jury answered "No." Issue No. 4, with which it is contended No. 3 conflicts, simply inquired if Iverson agreed with Weiner to accept (for plaintiffs) the two notes of appellant Gourley and credit the amount on plaintiffs' indebt-

edness; the answer was "Yes." It will be observed that in Issue No. 3, inquiry is made if such an agreement was made before Weiner took the notes, conditioned that he should get them, while No. 4 asked if Iverson agreed to accept the notes as a credit on plaintiffs' indebtedness. The evidence was conflicting as between Iverson and Weiner as to any conversation about Iverson accepting the notes, in the event Weiner should get them; Iverson's testimony supports the jury finding under issue 3, and we may not disregard it. There is no substantial conflict in the testimony of these same parties regarding the delivery by Weiner of the notes after he had received them, and Iverson in accepting them, and their application to plaintiffs' indebtedness. There is a conflict in their testimony as to whether Weiner requested the application of the credit to the Jenkins lease account. That question is not involved in the points under discussion. Under the circumstances involved here, the asserted conflict does not exist.

■ In his fifth point of error appellant contends there is an irreconcilable conflict between the answers to special issues 5 and 4 which required a declaration of mistrial. Issue No. 5 inquired if Weiner directed or requested Iverson to apply the Gourley notes to the Jenkins lease account; the jury answered "No." Issue No. 4 with which No. 5 is said to conflict, as indicated above, inquired if Iverson (for plaintiffs) agreed with Weiner to accept the Gourley notes and that they should be applied on "plaintiffs' indebtedness." Appellant argues: "Of course there could be no other indebtedness than the indebtedness sued for by plaintiffs." This contention is clearly contradicted by the record; as between Weiner and plaintiffs, Weiner owed plaintiffs approximately $15,000 or $16,000 aside from the indebtedness held by plaintiffs against the Jenkins lease, and it appears that the notes were credited on that indebtedness. Hence it is easy to see why the two answers do not conflict. Under the record both answers may be entirely true. The rule is that it will be presumed that a jury did not intend to return conflicting answers to special issues, and such answers will not be stricken if there exists any reasonable basis upon which they may be reconciled. Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97. Appellant cites many cases holding a reversal is required when answers to special issues are irreconcilable, but they are not applicable, when, as in this case, the conflict does not exist.

It will be observed that by special issue 5 Weiner did not direct or request Iverson to credit the Gourley notes on the Jenkins lease account and there was ample testimony to support the finding.

■ It is the settled rule of law in this state that a debtor may direct the application of any payment made by him to any one or more of plural debts owing by him, and the creditor has no option but to make application of the payment as directed. If there be a dispute of fact as to whether or not such request was made by the debtor it becomes a jury issue. 32 Tex.Jur. 673 et seq., sec. 27, and the many cases there cited. While upon the other hand it is said in the same text at section 28: "When the debtor makes a payment without exercising his right to direct the application thereof, the creditor may appropriate it to such debts due from the debtor as he chooses, provided he does not make an application that is inequitable and unjust to the debtor." We see nothing unjust or unfair to Weiner, the debtor in this case, in the application as made by the creditor. The application as made did work a detriment to the appellant Gourley, but he could not have controlled the application by plaintiffs; the notes delivered by Weiner were his own and he alone could direct their application. Moreover, upon some theory in the trial court's mind, he submitted an issue inquiring if Gourley, shortly prior to his purchase of the Weiner interest in the lease, directed Iverson to apply the two notes, he was to execute to Weiner, to the Jenkins lease account, and the jury answered "No."

■ Sixth point asserts error in entering the judgment against appellant for the reason, it is contended, that the uncontradicted testimony and the preponderance of the testimony showed that the material furnished and labor performed by plaintiffs on the Jenkins lease was furnished and performed by an independent contractor hired by Gourley and Weiner and that Gourley had paid such contractor in full for same, without notice of plaintiffs' claims.

Under a private written contract between Gourley and Weiner, they contemplated the development of the lease, and Weiner was to have all wells drilled and the producers placed on the oil lines; each of the parties

was to pay his proportionate part of the necessary expenses. Weiner owned and operated a string of drilling tools and operated them under the trade name of Samson Oil & Development Co., and under said trade-name Weiner did develop the lease for himself and appellant Gourley. Weiner billed Gourley from time to time for his part of the expenses and accounted to him for his proportionate amount of oil runs; Gourley and Weiner borrowed money to cover expenses of development. Gourley paid to Weiner all moneys claimed to be due Weiner, operating as Samson Oil & Development Co. The materials purchased from plaintiffs and labors performed by them in the course of development were charged to Weiner; but plaintiffs knew all were on the Jenkins lease and they knew Gourley owned the two-thirds interest, but did not know of the private contract between the owners for development, except Weiner told Iverson they were partners, and he was operating the lease for the partnership. Plaintiffs also knew the lease was producing and were familiar with their rights concerning liens on the lease. If the owners constituted a mining partnership, a matter we shall shortly discuss, either partner could bind the partnership for materials furnished and labor performed thereon. Gourley asserts that he knew nothing of the claims of plaintiffs, but if his partner contracted for the items in connection with his operations, Gourley would be chargeable with notice.

■ Seventh and ninth points assert error in entering judgment because (1) it is claimed by appellant that all materials furnished and labor performed by plaintiffs were for Weiner and not for the partnership, if any, of Gourley and Weiner. And (2) because the undisputed evidence fails to show that there was a mining partnership between Gourley and Weiner for the development of the lease in question. Referable to the first contention, under these points, indicated above, the court submitted an issue inquiring if the credit extended by plaintiffs for materials furnished and labor performed by them upon the lease in question was upon an open account with Weiner and the plaintiffs looked alone to Weiner for payment. The answer was "No." Iverson's testimony supported the answer. It is true that the record shows the materials were furnished and labor performed by plaintiffs at the request of Weiner and were charged to him on account, but it also appears that plaintiffs knew of Gourley's interest in the lease and that Weiner was supervising its development for the partnership of himself and Gourley. No issue was submitted inquiring if a partnership existed, nor did appellant request the submission of that or a similar one, nor did he object to the charge as a whole for that or any other reason. The effect of the judgment as a whole is that the court found the existence of the partnership as a matter of law. Without enumerating the testimony on the point, further than has been done, we think there is ample testimony to warrant such a finding by the court. Munsey v. Mills & Garitty, 115 Tex. 469, 283 S.W. 754. Since the evidence supported that finding that the partnership existed, and no request was made for a jury finding thereon, it will be deemed that the court found the facts in such way as to support the judgment. Rule 279, Texas Rules of Civil Procedure.

■ Points of error 8, 15, 18, 19, 20, 21 and 22 relate to the question of limitation pleaded by appellant. These points are briefed as a group. Appellant contends that each item of plaintiffs' accounts was for material and labor furnished on open account, providing for payment from the date of delivery of each item or under a contract partly oral and partly written, and were barred by the two years' statute of limitation; that the court erred in failing to deduct from the judgment that part of plaintiffs' claims which were barred by limitations; that the court failed to give effect to the provisions of maturity dates shown in the delivery tickets; that any oral agreement had between Iverson and Weiner was before the delivery slips were executed and Iverson should not have been permitted to testify concerning previous oral agreements and further that Iverson was not shown to be authorized to make a parol agreement with Weiner, for plaintiffs. We doubt if the recitations on the delivery tickets were sufficient to constitute a written contract between the parties; the tickets and invoices were such as were used by plaintiffs in all matters of open accounts and doubtless would have been used if cash had been paid; they formed a basis for book entries of transactions had in plaintiffs' line of business. See Bailey-Moline Hardware Co. v. Modern Wood-

men of America, Tex.Civ.App., 89 S.W.2d 246. Iverson was shown to be the manager of plaintiffs' business and an executive officer in one and Credit Manager for both corporations.

We think that under the evidence in this case and the jury findings, there was no question of limitation available to appellant. The question does not rest alone upon whether the dealings between plaintiffs and Weiner were all oral, or in writing, or partly oral and partly written. In either event, Gourley and Weiner were mining partners, as above indicated, and the act of one bound both in all matters pertaining to the partnership. The jury found that Weiner and Iverson agreed that the items of the account should not become due and payable until the last items of material and labor were furnished and performed. We have above pointed out this finding and the evidence in support of it. We know of no rule of law that would preclude them from making such an agreement. Gourley as the partner of Weiner was bound by the agreement. The affidavit lien was filed and the lien fixed within the statutory time thereafter and suit was filed within two years after the lien was thus fixed.

Points 10, 11, 12, 13 and 14 claim error in the court's refusal to submit as many issues requested by appellant. The first requested issue reads: "You are instructed that the plaintiffs must prove partnership by a preponderance of the evidence." The court gave a charge explaining the term "preponderance of evidence." The requested charge would have been meaningless to the jury if given, for the reason, no issue of whether or not there was a partnership between Gourley and Weiner was given by the court nor did either side request that such be submitted. Without enumerating the other requested issues, which were refused, it is sufficient to say that all except No. 7 were covered by the courts charge. No. 7 was properly refused because no answer to that issue, as worded, could change the nature of the judgment entered.

Sixteenth point asserts error in the judgment foreclosing the lien because "the Plaintiffs' liens were not filed in time and in accordance with the laws of this state in that said liens embodied work and labor performed on tools and equipment repaired at the shops of plaintiffs at places distant from the leasehold in question." Under this point it is argued that the development was being done by an independent contractor, the Samson Oil & Development Co., and that the tool and shop work included in plaintiffs' account were shown to have been done in plaintiffs' shop several miles from the lease; that no lien could be fixed on the Jenkins lease for such shop work and labors performed for an independent contractor. The rule announced concerning independent contractors is perhaps sound but under the facts before us we attach no importance to the idea that Weiner, operating as Samson Oil & Development Co., was an independent or subcontractor. Weiner was doing the work under his trade-name. He could not contract with himself. Appellant cites and relies upon Clayton v. Bridgeport Machine Co., Tex.Civ.App., 33 S.W.2d 787, writ refused. We have carefully studied the holding of that case and fail to see its application to the instant situation. That case does hold that the machine company could not recover for repairs made on rented tools, because repairs on such tools were not chargeable to defendants under the facts shown, and recovery was denied because the items were not such as the law gives a lien to secure. There is no discussion in that opinion relating to the place where the lien may or may not be created for material furnished or labors performed. Nor indeed, does the opinion disclose whether defendants were independent contractors. It is clear, however, from the opinion in the cited case, that the items in the account were for labor performed on rented tools. In the instant case we have no charges in the accounts for labor performed on tools rented by Weiner in connection with his drilling operations on the Jenkins lease.

Plaintiffs claim a lien on the lease under the provisions of Art. 5473, R.C.S., Vernon's Ann.Civ.St. art. 5473. That article is very broad in covering and protecting many classes of persons who "perform labor, furnish or haul material, machinery or supplies used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well," etc. From the language used in the statute, it is obvious to us that the legislative intent was not to confine the acts of those to whom the lien was provided, that all such labors performed, materials furnished and

hauling done should actually be done and performed and hauled, upon the ground or land upon which the lien is provided. A practical view of such situation would force the conclusion that if a driller's machinery should give way and need repairs, it would more than likely require going to some machine shop situated on another person's property for the needed repairs; then, too, it is rather certain that such hauling of materials and machinery, covered by the act, would cover territory not embraced by the confines of the leasehold.

Points of error 17, 24, and 25 are briefed together and are claimed to bear upon the issue of estoppel. In these points it is asserted in different ways that Iverson (acting for plaintiffs) had full knowledge, or the means of knowledge, that appellant was buying the interest of Weiner and paying him in full for same and did not apprise appellant that plaintiffs were claiming an indebtedness against the lease. The evidence does not conclusively support the contentions of appellant in this respect. The evidence is conflicting. Appellant testified that he talked to Iverson on the telephone, or at least Weiner had called Iverson and handed appellant the telephone and that he talked to the man Weiner said was Iverson and told him he was purchasing Weiner's interest. Appellant did not know Iverson nor had Iverson ever met him. Iverson denied having talked to appellant at any time before suit was filed. The jury accepted Iverson's testimony and rejected that of appellant.

In response to the seventh issue, the jury found that appellant did not tell Iverson that he was purchasing Weiner's interest and was paying for it in full by cash and notes. In response to the tenth issue the jury found that Gourley would have purchased Weiner's interest and paid for it as he did if he had not believed the application of the two notes to the Jenkins lease account would relieve him and the lease from further liability. It was also found by the eleventh issue that appellant would have purchased the Weiner interest if he had been told by Iverson that plaintiffs were claiming the indebtedness sued for against the Jenkins lease. As we view the effect of these findings by the jury, appellant's theory of estoppel has been determined against him. Estoppel arises when one is deceived and has acted to his own hurt because thereof. 17 Tex.Jur. 143, sec. 14; Shear Co. v. Wilson, Tex.Com.App., 294 S.W. 843.

Points 27, 28 and 29 assert error in the admission of the testimony of named witnesses as to the reasonableness of the items shown to be charges for materials furnished and services performed by plaintiffs. In his brief, appellant says: "The basis of this defendant's objection to this testimony was that there are no pleadings to support the same." We note by plaintiffs' petition allegations, substantially to the effect: That at various times, as shown by the attached statement of account, plaintiffs at the special instance and request of defendants, both acting by and through Weiner, sold and delivered materials and performed labor to and for defendants, "the reasonable actual cash market value of which * * * is reflected in said itemized account." The account was attached to and made a part of the petition. We hold that the pleadings were sufficient as a basis for the introduction of the offending testimony. No complaint is made of the competency of the witnesses to testify in the matters referred to. Weiner said he did not dispute the accounts sued on. In connection with these points appellant argues that it was error to permit the witness Craig, who audited the deal between appellant and Weiner to testify that an error of about $5,000 was made between the two at the time of the purchase by appellant of Weiner's interest but that it was adjusted between them; this was in contradiction of testimony previously given by appellant. It is claimed that such apparent contradiction influenced the jury to the prejudice of appellant. It would require too much space to enumerate the many things in the record, including appellant's testimony by deposition and upon the trial, to point out all that may have had the effect to cause the jury to discredit much of appellant's testimony.

For the reasons given, we think no reversible error is presented to us, and the judgment is affirmed.

McDONALD, C. J., did not participate in the decision of this case.