**P. V. FUQUA, Jr. and J. P. Fuqua, d/b/a Fuqua Brothers, Appellants,**

**v.**

**MOODY & CLARY COMPANY, Appellee.**

**No. 421.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Dec. 9, 1970.

Bill Payne; Lawrence, Thornton & Payne, Bryan, for appellants.

James F. Warren, Navasota, for appellee.

SAM D. JOHNSON, Justice.

Suit upon an unsworn open account brought by Moody & Clary Company, appellee, against P. V. Fuqua, Jr., and J. P. Fuqua, d/b/a Fuqua Brothers, appellants. Trial was to a jury. Based upon the jury's response to special issues, appellee Moody & Clary obtained a judgment in the sum of $5,353.18. It is from such judgment that appellant Fuqua Brothers perfects appeal to this Court.

Moody & Clary Company is a rural feed store in the business of selling feed, seed and dairy supplies to its customers. Its customers are farmers, ranchers and dairymen. Moody & Clary extended credit to some of its customers including Fuqua Brothers, who were engaged in the dairy business. It was an alleged accumulation of past due indebtedness which gave rise to the instant suit. Plaintiff's petition alleged that "prior to November, 1968, defendants were customers of plaintiff and purchased

various feeds and supplies from plaintiff, and as a result of these purchases from plaintiff, the defendants owe plaintiff a balance of $6,127.97, which amount includes service charges on the unpaid amount up to November, 1968."

The record reveals that Fuqua Brothers made credit purchases of feed from Moody & Clary over a period of years. The lady in charge of keeping the books and records for Moody & Clary testified to the procedure followed when such an order was called in or placed by a credit customer. She first made an invoice which reflected its number, the date, the salesman receiving the order, the quantity or number of pounds, a description of the particular product and the amount which was calculated in dollars and cents. Other persons prepared the order, that is the products for actual delivery. The delivery was then made by a Moody & Clary truck and the truck driver gave the purchaser a copy of the invoice at the time of delivery. Shortly after the first of the month following duplicate invoices were mailed to charge customers which showed each purchase and the total balance then due so that any discrepancy could be noted. It would appear from the record that Fuqua Brothers received the invoices at delivery and also received the periodic invoice mailings. Internally, Moody & Clary's same bookkeeper maintained a record of all sales along with an itemization of payments, credits, charges and the current balance associated with each credit customer.

■ Appellant here asserts 17 points of error, the first six of which are to the effect that there was no evidence or insufficient evidence of the delivery of the individual items comprising the account claimed to be due. Appellant contends that proof of delivery of each and every item is essential in an account case citing Parker v. Center Grocery Company, 387 S.W.2d 903 (Tex.Civ.App.), no writ hist.; Boucher v. City Paint & Supply, Inc., 398 S.W.2d 352 (Tex.Civ.App.), no writ hist.; Texan

Man's Shop, Inc. v. Nunn-Bush Shoe Company, 401 S.W.2d 716 (Tex.Civ.App.), no writ hist., and similar cases. The driver of the Moody & Clary delivery truck did not testify and there is no testimony which describes the depositing of the goods at the Fuqua Brothers dairy. From the testimony of the Moody & Clary employees, however, it is quite clear that orders were prepared and made only when they were called in by the customer. It was at such time that the lady in charge of the books and records of Moody & Clary promptly made the records pertinent to each transaction. She identified all of such records including the record of payments, credit and charges.

Article 3737e, Vernon's Ann.Tex.Civ.St., provides:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or °event or the existence of the condition if the judge finds that:

"(a) It was made in the regular course of business;

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

"Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the

memorandum or record but shall not affect its admissibility."

The witness giving the testimony relative to the business records of Moody & Clary was a qualified witness within the meaning and intent of the statute and her testimony supports the implied finding that the invoices were made at or near the time of the recorded act. Under Art. 3737e the entries reflected in the various invoices were competent evidence that Fuqua Brothers had placed the orders, and that Moody & Clary had filled the orders and made delivery of the feed. Under similar circumstances our Supreme Court commented, "The invoices are evidence only, and petitioners (comparable to Fuqua Brothers here) were not precluded from proving, if they could, that the prices charged had not been agreed to or that the materials had not been delivered." Universal Savings & Loan Ass'n v. Security Lumber Co., 423 S.W.2d 287 (Tex. Sup.1967). Appellant's points of error which relate to delivery of the individual items comprising the account are overruled.

In points of error 11 through 13, appellant contends that the trial court erred in admitting testimony showing application of payment by Moody & Clary to the oldest balance of Fuqua Brothers contrary to the expressed direction of Fuqua Brothers that the payments were to be applied to specific tickets.

In the court's charge the jury was instructed that:

" * * * the manner of payment or the manner of crediting payments to an account may be agreed to by the parties to a purchase or a sale, and you are further instructed that such manner of payment or method of crediting payments as agreed to, if such be the case, shall be binding on the parties, until such time as one party repudiates such agreement and the repudiation is brought home to the other party.

"You are further instructed that under our law actions for debt where the indebtedness is not in writing must be commenced and prosecuted within two years after the accrual of the cause of action in absence of an express agreement for payment or for compensation."

Such instruction preceded special issue number three in which the jury found that the payments made by Fuqua Brothers subsequent to March 19, 1967 were *not* in payment of specific tickets.

The record reveals that the parties had a dispute concerning the payment for items sold prior to March 19, 1967. One of the Fuqua Brothers testified that as a result of this difference and to avoid future disputes, J. D. Moody (of Moody & Clary) instructed the Fuqua Brothers to place the invoice numbers on their checks in making future payments. Thereafter Fuqua Brothers did place specific invoice numbers on their checks and the checks were made out in the particular sums reflected in the invoices listed on the face of the checks. In addition the face of the checks were imprinted "By endorsement this check when paid is accepted in full payment of the following account." It was following such imprintation that the invoice numbers and the dollar amounts applicable thereto were inserted by Fuqua Brothers on their checks. Subsequent to March 19, 1967, Fuqua Brothers followed this procedure in all of their check payments to Moody & Clary except for invoices which total only $970.44.

We believe it to be fundamental that a debtor, owing distinct and separate accounts, may direct the application of any payment made by him to the account or indebtedness of his choosing and the creditor has no option but to make application of the payment as directed.

"It is the settled rule of law in this state that a debtor may direct the application of any payment made by him to any one or more of plural debts owing by him,

and the creditor has no option but to make application of the payment as directed. If there be a dispute of fact as to whether or not such request was made by the debtor it becomes a jury issue. * * * "

Gourley v. Iverson Tool Co., 186 S.W.2d 726 (Tex.Civ.App.1945), ref., w. m. Such specifically designated payments operate to vary the general rule that payments on account should be credited to the first items thereof. Champlin Oil & Refining Company v. Chastain, 403 S.W.2d 376 (Tex. Sup.1965).

■ It does not appear to have been factually disputed that the numerous checks given by Fuqua Brothers since March 19, 1967 were made in payment of specific invoices or tickets. There is no evidence to the contrary and no contradiction of the affirmative assertions supporting such contention appearing in the record. Under such circumstances we believe there can be no question but that the debtor, Fuqua Brothers, owing distinct and separate invoices, designated the particular invoices for which payment was being made. This is made apparent by the checks themselves even if there was no other support in the record. The jury's finding that the payments of Fuqua Brothers subsequent to March 19, 1967 were not in payment of specific tickets is wholly devoid of support in the record. Appellant's points of error 11 through 13 are sustained.

■ Appellant's points of error seven through ten are predicated upon the two-year statute of limitations on open accounts, Sec. 5, Art. 5526, V.A.C.S. In essence, appellant contends that charges for items delivered before two years prior to filing of the instant action were considered by the jury though they were barred by the statute of limitations and that no "special contract" was pled or proved which would remove them from the application of the general rule of the statute. In view of the disposition here

made we note that any agreement, understanding or contract which is relied upon to avoid the application of the statute must be pleaded and proven.

Having sustained appellant's points of error 11 through 13 we must reverse and remand to the trial court. In view of this disposition we do not pass upon appellant's remaining points of error.

Reversed and remanded.