## In re CARUTHERS' ESTATE.

### No. 3836.

Court of Civil Appeals of Texas. Beaumont.

May 29, 1941.

Rehearing Denied June 4, 1941.

Leroy McCall and George M. Sonfield, both of Beaumont, for appellants.

Strong, Moore & Strong and H. P. Barry, all of Beaumont, for appellee.

COMBS, Justice.

This is a will contest. By will, executed March 11, 1936, the testator, J. E. Caruthers, devised $25 per month, conditionally, to each of two aged brothers during their life, and the balance of his estate to charity—$5,000 to Father E. A. Kelley, pastor of St. Anthony Catholic Church, of Beaumont, for the use and benefit of the parochial school of the parish, and the residue of the estate to Bishop C. E. Byrne, bishop of Galveston, for the use and benefit of the orphans of the diocese of Galveston. Caruthers was never married. The contestants are certain of his nephews and nieces. They contested probate of the will on the grounds, first, that deceased was mentally incompetent, and second, that the will was procured by undue influence exerted by the principal beneficiaries named in the will, Father E. A. Kelley, pastor, and Father Cody, assistant pastor, of St. Anthony's Catholic Church of Beaumont, and Bishop C. E. Byrne, bishop of the diocese of Galveston. On a trial to a jury in the district court, the jury found the deceased mentally competent, but also found that the will was procured by undue influence. On motion for judgment non obstante veredicto the trial court entered judgment probating the will, holding that the finding of undue influence was without support in the evidence.

Appellants do not attack the jury's finding that the testator was mentally competent to make the will. Their contention here is that the evidence raised an issue of fact and was sufficient to support the jury's finding that the will was procured by exertion of undue influence upon the testator.

We think the trial court entered the proper judgment. The jury's finding that the will was procured by the exertion of undue influence was without any evidence of probative value to sustain it.

There was no evidence whatever that either Bishop Byrne, Father Kelley or Father Cody exerted any influence upon the testator to induce him to execute the will. There is no evidence that either of them knew that Mr. Caruthers contemplated making the will. There is no evidence that Bishop Byrne or Father Cody even knew Caruthers or ever communicated with him in any way. Father Kelley knew him as one of the members of his church, but his testimony, which is not disputed in any way, was that he did not know what property the testator possessed. Nor is there any evidence that Father Kelley knew that Mr. Caruthers contemplated making a will.

Deceased lived alone. He had a room in a small hotel in the city of Beaumont. He was possessed of an estate of the value of about $28,000. Contestants offered evidence tending to show that he was of a miserly nature and had few friends, and that for a number of years prior to his death he was a regular attendant at early morning mass, and was a devoted member of St. Anthony's Catholic Church, of which Father Kelley was pastor. They also offered evidence that his collateral kindred, including the contestants and two aged brothers, are all poor people, and that deceased had made some small contributions to them from time to time.

As we have said, we think the evidence as a whole failed to raise any issue of undue influence, but as against that conclusion the contestants say that several matters proved by them raised the issue circumstantially. We will notice these contentions briefly. They are:

First: That the provisions of the alleged will differ from the testamentary intent which the testator was shown to have entertained and expressed prior to the execution of the will. This contention is based on the testimony of a witness who testified that Mr. Caruthers told him in 1925 that he intended to leave his property to his relatives. If it should be conceded that such testimony may in a proper case be of probative value in determining the issue of undue influence, still it had no probative value in this case. The will in issue was made in 1936. The alleged conversation with the deceased occurred more than ten years before the will was made. It was,

therefore, too remote to be of any probative value in determining the intention of the testator at the time the will was made. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138; Helsley v. Moss, 52 Tex.Civ.App. 57, 113 S.W. 599.

■ Second: They contend that the named beneficiaries had full opportunity to control the testator's acts since he was a devout Roman Catholic. But mere proof of opportunity to exert undue influence was no proof that it was exerted. Bethel v. Yearwood, Tex.Civ.App., 142 S.W.2d 927; Maul v. Williams, Tex.Civ.App., 88 S.W. 2d 1087.

■ Third: It is also contended that testator was one who could have been unduly influenced because he was 70 years old when the will was made, had been sickly for years, was weak, queer, etc. The record, as a whole, fails to show that the testator was of weak mind and easily influenced. Rather the evidence is strongly to the contrary. He was for years a director of the Texas National Bank. Business associates testified that he was a man of more than average intelligence, a prudent and careful business man. He made a will in 1929, in which he made substantially the same disposition of his property as in the will under consideration. The present will, made in 1936, merely changed the executor from Father Kelley, who was named in the 1929 will, to the First National Bank of Beaumont, and with a slight change with reference to the $25 a month left to his aged brothers, by adding the condition that it was to be paid only so long as they do not receive that much from old age pensions. After the will was made he placed it with the First National Bank and put a written memorandum in his lockbox at the American National Bank in Beaumont, stating where it could be found. He lived for more than three years after executing it without expressing any desire to change or revoke it. Certainly, these facts failed to reveal the testator as a man who did not know his own mind or carry out his intentions by the terms of the will which he made. Helsley v. Moss, 52 Tex.Civ.App. 57, 113 S.W. 599.

■ Fourth: It is contended further that the will was unnatural and unjust in that by its terms, aside from small conditional legacies of $25 per month for each of his two aged and impoverished brothers, all of testator's relatives were left no legacies although they were poor and the natural recipients of testator's bounty.

In proper cases, proof that a will was unnatural and unjust has been admitted as a circumstance bearing upon the issue of mental capacity, or as tending to show the result of undue influence. But such evidence is of no probative value in establishing the vital issue that undue influence was in fact exerted upon the testator.

■■ A testator has the legal right to select freely the objects of his bounty and no inference against the validity of his will can be drawn from the mere fact that his needy kinfolk were left nothing, or that the will might appear to others as making an unfair disposition of the testator's property. A testator's right to bestow his property by will at death is as absolute as his right to convey it during his life time.

■ But aside from the above principle which we think fully disposes of the contention, the facts of this case failed to establish that there was anything unnatural about the disposition which the testator made of his property. He was a bachelor. And although he occasionally visited his two aged brothers and was on friendly terms with some of his nephews and nieces, he lived alone. For many years prior to his death, he was a devoted member of his church and attended its services regularly, and although the contributions which he made to its support were small compared to his means, still he did make regular contributions to it. Under these circumstances it was certainly not unnatural for testator to leave the major part of his estate to the support of certain charities— St. Anthony School and the orphans of the diocese—fostered by his church. If wills may be stricken down as "unnatural" on such showing, then every bequest grounded upon considerations of religion and charity to the exclusion of relatives who would like to be remembered by the testator, would be open to attack. Our courts have ever been diligent to guard the right of a testator to dispose of his property as he pleases and to uphold bequests made for charitable and religious purposes. Obviously, such bequests are less apt to be the result of undue influence than those made to private individuals who might for selfish reasons be inclined to exert influence upon the testator. It is true that proof of such collateral matters as an expressed testa-

mentary intent contrary to that expressed in the will, opportunity of beneficiaries to exert undue influence, and proof that the provisions of a will are unnatural have been received in proper cases. But such proof is of a collateral nature and is usually admitted as tending to show the surrounding circumstances under which the will was made, as supporting proof of lack of testamentary capacity; or as tending to show that undue influence proved otherwise in fact produced a result contrary to the wishes of the testator. But such proof is not accepted by our courts as of probative value in establishing the vital issue of undue influence in the absence of evidence that undue influence was in fact exerted upon the testator. As we have pointed out above, there was no such proof in this case.

The judgment of the trial court is affirmed.