**Elizabeth Jane KIRKPATRICK, Appellant,**

v.

**Louise B. RAGGIO et al., Appellees.**

**No. 15967.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 12, 1958.

Rehearing Denied Jan. 9, 1959.

Harold L. Patterson, Garvin H. Germany, Jr., and C. C. Renfro, Dallas, for appellant.

Grier H. Raggio, Dallas, for appellee Louise B. Raggio.

De Shazo & Hyde, and Ara S. Hyde, Dallas, for appellees Dorothy Grove et vir.

RENFRO, Justice.

The will of George Kirkpatrick was admitted to probate by the Probate Court of Dallas County. Thereafter, Elizabeth Jane Kirkpatrick filed a proceeding to contest the validity of the will. Judgment was rendered against her, whereupon she appealed to the District Court. The grounds for invalidating the will were based on alleged mental incapacity and undue influence.

No issue was requested or submitted on mental incapacity. The court submitted

the following issue: "Do you find from a preponderance of the evidence that the making and execution of the instrument, which was signed by George Kirkpatrick as his last will and testament on December 2, 1955, was procured by undue influence on the part of Dorothy C. Grove or James D. Grove or Louise B. Raggio?", to which the jury answered "Yes."

The court sustained a motion for judgment non obstante and entered judgment which upheld the order of the Probate Court.

Miss Kirkpatrick has appealed on the ground the court erred in entering judgment non obstante veredicto.

Although the 344 page statement of facts contains the testimony of fifteen witnesses, there is surprisingly little conflict in the evidence.

Kirkpatrick's wife, Margaret, predeceased him.

Before her marriage to Kirkpatrick, Margaret had been married to John Presbrey. Margaret was possessed of considerable personal and real property when she married Kirkpatrick. Margaret died on October 16, 1955. The greater portion of the property disposed of by Kirkpatrick by the will of December 2, 1955, was acquired from Margaret's estate.

In May of 1955, Kirkpatrick and Margaret went to Mrs. Rosson and had her prepare a will in which Kirkpatrick made Margaret his sole beneficiary.

On October 19, 1955, following Margaret's death, Kirkpatrick, accompanied by Mrs. Rosson, went to the office of Judge Shelby Cox, then a practicing attorney. He had known both Judge Cox and Mrs. Rosson twenty-five or more years. He requested Cox to probate Margaret's will, but it was discovered the will had not been witnessed, so Cox was employed to file application for administration. Cox, at that time, at the request of Kirkpatrick, prepared a will in which Kirkpatrick devised

and bequeathed to Dorothy Grove all of his property, and which named her independent executrix without bond. The will was delivered to Kirkpatrick.

On December 2, 1955, Kirkpatrick executed the will in question. Witnesses were Margaret E. Mosshart, Marjorie Hayes, Marion Lake and Grier H. Raggio. The will was prepared by Louise Raggio. In this will Kirkpatrick bequeathed to a sister, a niece and a nephew certain designated items of personal property, and bequeathed to his daughter Jane, appellant herein, $1,200 in trust to be held by a savings and loan association and paid to Jane in the sum of $100 per month. All the rest and residue was bequeathed to Dorothy Grove. Mrs. Raggio was named executrix. After Kirkpatrick's death she duly qualified and made bond.

Margaret and Presbrey, her former husband, formerly lived in California. Mrs. Grove, then a child, became a close friend of Margaret and Presbrey. That close friendship continued more than thirty years and up to the date of Margaret's death. While a girl she spent several vacations a year in Margaret's home. Margaret designated one room in her home as Dorothy's room. After Margaret moved to Dallas, Dorothy continued to visit her at frequent intervals. While Dorothy's husband, James, was overseas, Dorothy and her children lived with Margaret. The relationship between Margaret and Dorothy was like that of mother and daughter. Margaret referred to Dorothy's children as her grandchildren. She referred to the Groves as her little family. After Margaret married Kirkpatrick, the Groves continued to visit Margaret at frequent intervals. The relationship between Kirkpatrick and the Groves was one of close friendship. Kirkpatrick remarked to several persons he wanted all his property to go to Dorothy. Jane was Kirkpatrick's daughter by a prior marriage. Due to a divorce between Kirkpatrick and his first wife, he did not see his daughter very often after she reached her "teens", but their relationship was

friendly and they corresponded with some degree of regularity. After the divorce of her parents she lived in California with her mother.

At the time of the execution of the wills of May and October, none of the persons mentioned in the issue submitted to the jury were present. There is no evidence any of the three knew such wills were to be made. At the time of the execution of the December 2nd will neither of the Groves was present. Mrs. Raggio was present in the capacity of an attorney. Mrs. Raggio told the persons present who were to witness the will that they must all be together in the room. The will was signed by Kirkpatrick in his bedroom. He told the witnesses the instrument was his will and he wanted them to sign as witnesses. He was in good spirits and in a cheerful mood.

Prior to December 2, Kirkpatrick was in bad health, had been in and out of the hospital, but was able to cook, drive his car and take care of most of his daily needs.

Appellant contends she established the following facts and circumstances with sufficient evidence to uphold the jury's verdict of undue influence:

The will was contrary to moral law and was unnatural; Kirkpatrick was a very sick man before Margaret induced him to make the will of May 5, 1955, and was in a state of shock, over his wife's death, when he made the October 19, 1955, will; Dorothy and James Grove had been with Kirkpatrick three days before he made the October 19th will; if Kirkpatrick had personally made the decision to make the December 2nd will, he would have gone back to Shelby Cox, and not to Mrs. Raggio; Marion Lake tried to help Dorothy Grove obtain the estate; there is no evidence there was any real affection between Dorothy Grove and Kirkpatrick.

Appellant relies strongly on Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, where-in it is held that undue influence can be established by circumstantial as well as direct evidence. The evidence in the Long case, however, is far different from the facts in the instant case.

■ It is undisputed Margaret and Dorothy were unusually close and dear to each other; that Kirkpatrick was fully aware of that feeling; that Kirkpatrick, too, was very friendly to Dorothy; that practically all the property, including the house they lived in, was Margaret's; that Margaret wanted the survivor (as between herself and Kirkpatrick) to leave the property to Dorothy. Under the evidence we cannot say the disposition made by Kirkpatrick was unnatural. In any event, he had the right to dispose of it as he pleased. In re Caruthers' Estate, Tex.Civ.App., 151 S.W.2d 946.

Although Kirkpatrick was in bad health at the times he executed the three wills heretofore mentioned, there is no evidence he did not know the consequences of his acts.

Prior to December 2, he told several disinterested witnesses, including Judge Cox, that he wanted Dorothy to have all the property.

We find no evidence of facts or circumstance in the record from which the jury could believe that Kirkpatrick did not independently and personally decide to change the October 19th will, or that Mrs. Lake tried to help Mrs. Grove obtain the estate by exerting influence over Kirkpatrick. The evidence shows that Margaret, prior to her death, contacted Mrs. Raggio with the intent to have her prepare a new will. Prior to December 2, Kirkpatrick inquired of Mrs. Lake the last name of Mrs. Raggio. There is no evidence in the record that Mrs. Raggio approached Kirkpatrick, or that any one suggested to Kirkpatrick that he call Mrs. Raggio.

■ Generally speaking, undue influence is such influence or dominion as exercised

at the time, under the facts and circumstances of the case, which destroys the free agency of the testator, and substitutes in the place thereof the will of another. Long v. Long, supra. Undue influence implies that the free agency and independent volition of the person on whom the influence was exerted has been destroyed. 42 Tex. Jur., p. 793, sec. 4.

■ To prove undue influence by circumstantial evidence, the circumstance must be so strong and convincing and of such probative force as to lead a well-guarded mind to a reasonable conclusion that such influence was exercised and that it controlled the will power of the testator at the very time the will was executed. Taylor v. Small, Tex.Civ.App., 71 S.W.2d 895.

■ With all due respect to the most able brief filed by appellant, we think the strongest evidence in her favor is the fact that the Groves were with Kirkpatrick from the date of Margaret's death on October 16 to or about the date the October 19th will was executed. The Groves at that time did have "opportunity". Improper influence cannot be inferred alone from opportunity; there must be testimony, either direct or circumstantial, to show that undue influence not only existed, but that it was in fact exercised with respect to the making of the will itself. Maul v. Williams, Tex.Civ.App., 88 S.W.2d 1087.

The December 2nd will was less favorable to Mrs. Grove than the October will. After October 19th the Groves continued to visit Kirkpatrick on week ends "taking care of errands". During the same time Kirkpatrick's sister and Margaret's sister were doing errands for him. The evidence does not show when the Groves last saw Kirkpatrick prior to December 2. Neither does the evidence show they were aware the will was going to be executed. There is no evidence they ever managed or attempted to manage his affairs, or interfered in the management of his business or affairs.

■ The rule is well established that an issue of undue influence is not raised unless the record contains some evidence of probative force that such influence was exercised, and that it subverted and overpowered the will of testator and caused the execution by him of a will which he would not have executed but for such influence. Olds v. Taylor, Tex.Civ.App., 180 S.W.2d 511.

■ For the evidence to be sufficient to submit an issue on undue influence, it must be more than purely speculative and when its probative force is so weak that it only raises a mere suspicion or surmise, the evidence is insufficient to support such an issue. Where the evidence on such an issue is so indefinite and uncertain as to preclude a finding, the issue should not be submitted. Black v. Black, Tex.Civ.App., 240 S.W.2d 458.

■ Rule 301, Texas Rules of Civil Procedure, provides that the court may render judgment non obstante veredicto of a directed verdict would have been proper. The term "no evidence" does not mean literally no evidence at all. "No evidence" comprehends those situations wherein by the application of established principles of law the evidence is deemed legally insufficient to establish an asserted proposition of fact. King v. King, 150 Tex. 662, 244 S.W.2d 660; Shelton v. Belknap, Tex.Civ.App., 275 S.W.2d 174, reversed on other grounds 155 Tex. 37, 282 S.W.2d 682.

■ We have viewed the entire record in the light most favorable to the jury's verdict.

It is our conclusion the testimony relied upon by appellant to show undue influence was purely speculative, and its force was so weak that it did no more than raise a mere suspicion or surmise of undue influence upon the part of any of the three persons named in the submitted issue.

In view of the authorities, we think the trial court properly held the evience insufficient to raise the issue of undue influence and the judgment non obstante was properly rendered.

Judgment affirmed.