**CITY OF HOUSTON, et al., Appellants,**

v.

**Robert T. SAVELY, et al., Appellees.**

**No. 01–85–0178–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 13, 1986.

Rehearing Denied April 17, 1986.

William A. Olson, Olson & Olson, Houston, for appellants.

Mike Gallagher, Fisher, Gallagher, Perrin & Lewis, Houston, D. Douglas Brothers, Loenard, Koehn & Hurt, Austin, for appellees.

Before COLEMAN, C.J. (Retired), and DUGGAN and HOYT, JJ.

## OPINION

COLEMAN, Chief Justice (Retired).

This is an appeal from a judgment that held two City of Houston annexation ordinances void. These ordinances numbers 77–1423 ("the strip annexation") and 77–1668 ("the block annexation") purported to annex the unincorporated area known as Clear Lake City. The plaintiffs, Clear Lake City Water Authority and 12 private citizens, sued the City of Houston and various present and former officials of the city ("Houston" or "the city") seeking to have the annexation ordinances declared void by reason of alleged violations of the Municipal Annexation Act, Tex.Rev.Civ.Stat.Ann. art. 970a (Vernon 1963 & Supp.1986). The State of Texas through the County Attorney intervened on the side of the plaintiffs by filing an Information in the Nature of Quo Warranto attacking only the strip annexation ordinance.

After a trial to a jury, judgment was rendered declaring each of the ordinances void *ab initio* and permanently enjoining Houston from imposing or collecting taxes in the area in dispute or otherwise exercising jurisdiction over such area.

Appellants first attack special issue number four and the jury's answer thereto. This issue inquired whether all plaintiffs wishing to be heard before the Houston City Council on the subject of the block annexation ordinance were given an opportunity to be heard. The court directed the jurors to answer either "all plaintiffs were not heard" or "all plaintiffs were heard." The city objects to this issue for the reason that the wording of the proposed answer suggests that the inquiry is whether all plaintiffs were heard and not whether all plaintiffs were given the opportunity to be heard. While we consider that the wording of the proposed answers was unduly favorable to the plaintiffs, we cannot say that the error was calculated to cause and probably did cause a rendition of an improper judgment.

The only evidence supporting the answer made to special issue number four was the

testimony of Lynn Otto that she had signed up to speak at the hearing and was not given an opportunity to do so. Those wishing to be heard at the block annexation hearing were required to call the city secretary and sign up before 5:00 p.m. on Monday, August 8, 1977. The list furnished to the city council by the city secretary contained 291 names. Some of the names were marked out with a notation "cancelled." All of the names not marked out were called to speak, generally in the order in which they appeared on the list. One hundred seventy-nine of the people who signed up either spoke or had someone speak for them. One hundred seven people were not present when their names were called and did not speak. All of the speakers were opposed to the annexation.

Ms. Otto's name was not on the list. She testified that she signed up and that she saw her name added as the last name on the list. She was present at two sessions of the hearing, including the last session. Her name was never called. While her name did not appear on the list for speakers on the block annexation, it did appear as the last name on the list of speakers for the strip annexation. There is no evidence that Ms. Otto objected at the last session because her name was not called.

■ The hearings continued over parts of three days and consumed 16 hours. An orderly and reasonable procedure was followed in calling on the speakers, and there is no evidence that the city in any way stifled the opposition to its proposed action. If in fact Ms. Otto told the city secretary that she desired to speak to the block annexation ordinance, as she testified, rather than the strip ordinance, it is apparent that the city secretary inadvertently put her name on the wrong list of speakers. Because the failure to call Ms. Otto as a speaker was not called to the attention of the council, Ms. Otto's testimony is insufficient to support the answer of the jury that all plaintiffs were not given the opportunity to be heard. The city substantially complied with the provisions of Tex.Rev.Civ. Stat.Ann. art. 970a, sec. 6 in effect at the time ordinance 77–1668 was passed.[1]

A statute should be construed as a whole; legislative intent should control, and common sense should govern. If possible, a court should place upon a statute a construction that will not result in injustice, unreasonableness, prejudice to the public interest, or absurd consequences. *National Surety Corp. v. Ladd,* 131 Tex. 295, 301, 115 S.W.2d 600, 603 (1938). *Texas Liquor Control Board v. Falstaff Distributing Co.,* 369 S.W.2d 483, 486 (Tex.Civ.App.— Houston 1963, no writ).

Special Issue No. four should not have been submitted to the jury, and the answer to such issue should have been disregarded. *See Cain v. Tennessee-Louisiana Oil Co.,* 382 S.W.2d 794, 799 (Tex.Civ.App.— Tyler 1964), *aff'd,* 400 S.W.2d 318 (Tex. 1966); *Lee v. Continental Trailways,* 564 S.W.2d 392, 394 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

■ To summarize, there is no evidence that Ms. Otto advised the city council that she had reserved time to speak, that her name had not been called, and that she wished to be heard. Consequently, there is no evidence that Ms. Otto was denied the opportunity to be heard. *See Kirkpatrick v. Raggio,* 319 S.W.2d 362, 366 (Tex.Civ. App.—Fort Worth 1958, writ ref'd n.r.e.).

The jury found in answer to special issue number six that the property described in the block annexation ordinance encroached upon the boundaries and extraterritorial jurisdiction of Pasadena, Webster, and Nassau Bay "as depicted in Plaintiffs' Exhibit No. 134." The jury also found, in answer to special issue number eight, that the property described in the block annexation ordinance was outside the extraterritorial jurisdiction of Houston. Finally, the jury found, in answer to special issue number 11, that the City of Houston intended to disclaim extraterritorial jurisdiction west of the line set forth in the Houston/Pasa-

1. Ch. 163, sec. 1, 1965 Tex.Gen.Laws 345–46, *amended by* Ch. 842, sec. 1, 1981 Tex.Gen.Laws 3207, and Ch. 776, sec. 1, 1983 Tex.Gen.Laws 4595.

dena agreement by which certain territories were exchanged and Houston specifically ceded to Pasadena extraterritorial jurisdiction in certain territory.

The limits of the extraterritorial jurisdiction of Houston and Pasadena depend largely on the validity of two Houston ordinances, 65–1555–AR and 65–1555–BR, which represented attempts by Houston to extend southward and to outflank Pasadena's annexations in the same general area. Litigation between Houston and Pasadena with regard to the validity of the two Houston annexation ordinances eventually reached the Supreme Court of Texas. In the *City of Pasadena v. State ex rel. City of Houston*, 12 Tex.Sup.Ct.J. 273 (Feb. 26, 1969), the Supreme Court held the City of Houston Ordinances void. However, a motion for rehearing was granted, the opinion was withdrawn, and a second opinion was issued holding that Pasadena had not properly preserved the issue of procedural defects in the passage of the ordinances. The case was remanded to the trial court. *City of Pasadena v. State ex rel. City of Houston*, 442 S.W.2d 325 (Tex. 1969).

Prior to the issuance of the second opinion, Pasadena and Houston jointly requested that the action be dismissed. The Supreme Court refused to grant the dismissal and issued the opinion. The withdrawn opinion must be treated as if it had never been rendered. *Mixon v. Wallis*, 161 S.W. 907, 911 (Tex.Civ.App.—San Antonio 1913, writ ref'd).

By a judgment signed on December 5, 1969, the district court granted a summary judgment declaring the Houston Annexation Ordinance No. 65–1555–BR valid and declaring certain Pasadena annexation ordinances invalid. On December 30, 1969, Houston Ordinance No. 69–2386 and Pasadena Ordinance No. 69–309 were finally passed. These two ordinances embodied an agreement between Houston and Pasadena, wherein the two cities exchanged some territory inside their corporate limits, and Houston released to Pasadena all of its extraterritorial jurisdiction to the east of a line running generally north and south at the east side of the Clear Lake City area.

Although it was not set out in the ordinances, it was understood between the two cities that the judgment of December 5, 1969, would not be appealed. The two ordinances became effective on April 1, 1970. The summary judgment sustaining the validity of the Houston annexation ordinances became final within 30 days after it was signed on December 5, 1969, and as a result, it was final prior to the date the two ordinances became effective.

The plaintiffs contend that Houston's Annexation Ordinance No. 65–1555–BR is ineffective, despite the district court judgment of December 5, 1969, because the judgment was superseded by the settlement agreement. There is no direct evidence, written or otherwise, of an agreement between the two cities that the judgment would be set aside. In the absence of a proper ordinance authorizing the action, a city cannot abandon territory within its city limits even to implement an agreement with another city. *City of Hitchcock v. Longmire*, 572 S.W.2d 122, 126–27 (Tex. Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *see* Houston City Charter, Art. 7, secs. 3 & 10. As a result, the territory described in the Houston Annexation Ordinance No. 65–1555–BR was validly annexed.

The evidence establishes that if Houston's extraterritorial jurisdiction is measured from the city limits as established by ordinance No. 65–1555–BR, the territory annexed subsequently by ordinance No. 77–1668, the block annexation, was within Houston's extraterritorial jurisdiction.

The jury found, in answer to special issue number 11, that the City of Houston intended to disclaim extraterritorial jurisdiction west of the line set forth in the Houston Ordinance No. 69–2386. This ordinance provided:

The City of Houston hereby agrees and consents that, effective at 12:00 o'clock midnight on the 31st day of March, 1970, all of the unincorporated areas lying to

the east of the line described in section 1 of this ordinance which are now within the extraterritorial jurisdiction of the City of Houston, overlapping or otherwise, shall, to the full extent permitted by law, become and be a part of the extraterritorial jurisdiction of the City of Pasadena.

The ordinance is silent as to the extraterritorial jurisdiction of the City of Houston west of the line described in section 1. By this ordinance, the City of Houston disclaimed extraterritorial jurisdiction of the land east of the line set forth in the ordinance but not to the land west of that line.

"Extraterritorial jurisdiction" is a concept created by the Municipal Annexation Act, Tex.Rev.Civ.Stat.Ann. art. 970a, sec. 3 (Vernon 1963). By this act, a city having a population of 100,000 or more, such as Houston, was given extraterritorial jurisdiction over all contiguous unincorporated area within five miles of its city limits. Sec. 3(A)(5). Where cities were close together, such as Pasadena and Houston, the act created some overlapping extraterritorial jurisdiction. Section 3(B) of the act provides that overlapping extraterritorial jurisdiction can be resolved by mutual agreement or litigation. Section 7(A) provides that a city may annex territory only within its extraterritorial jurisdiction. Section 3(C) provides for the expansion of a city's extraterritorial jurisdiction when new territory is annexed, provided it does not conflict with already existing extraterritorial jurisdiction of another city. This section also provides that the extraterritorial jurisdiction of a city shall not be reduced without the written consent of the governing body of such city.

■ Special Issue number 11 did not ask whether the City of Houston disclaimed extraterritorial jurisdiction of the area west of the line set forth in ordinance 69–2386. It merely inquired as to the city's *intention* to disclaim extraterritorial jurisdiction in that area. This is an immaterial issue because the city could only disclaim its extraterritorial jurisdiction by an instrument in writing. Art. 970a, sec. 3(C).

There is no evidence that the extraterritorial jurisdiction of the City of Houston was reduced west of the line set out in ordinance 69–2386 with the written consent of the Houston City Council as required by sec. 3(C) of the Municipal Annexation Act.

■ The *plaintiffs* contend that the rule of construction set out in *State v. Mauritz-Wells Co.*, 141 Tex. 634, 175 S.W.2d 238 (1943), is applicable in this case and demonstrates that Houston had no extraterritorial jurisdiction west of the line established by ordinance 69–2386. The doctrine referred to in that case was "the express mention or enumeration of one person, thing, consequence, or class is equivalent to an express exclusion of all others." *Id.* at 639, 175 S.W.2d at 241. At the time of this ordinance, Houston had extraterritorial jurisdiction both east and west of the line. If this doctrine is applicable, the ordinance's express disclaimer of jurisdiction of the area east of the line would be an "express exclusion" of a disclaimer of jurisdiction of the area to the west of the line.

■ While the Houston/Pasadena agreement did not confer extraterritorial jurisdiction on Houston to the west of the dividing line, neither did it take away from Houston the extraterritorial jurisdiction that it acquired as a result of the annexation of territory by ordinance 65–1555–BR. Special issue number 11 should have been disregarded by the trial court in considering the judgment to be rendered.

■ In answer to special issue number six, the jury found that the Houston Block Annexation Ordinance encroached upon the extraterritorial jurisdiction of Pasadena, Webster, and Nassau Bay as well as the Webster city limits, "as depicted in Plaintiffs' Exhibit 134." The evidence in this case establishes as a matter of law that all of the territory annexed by ordinance 77–1668 was within the exclusive extraterritorial jurisdiction of the City of Houston, and that none of such territory encroached upon or extended into the extraterritorial jurisdiction of Pasadena, Webster, or Nassau Bay.

The boundaries and extraterritorial jurisdiction of Houston, Pasadena, and Webster on August 23, 1963, the effective date of Tex.Rev.Civ.Stat.Ann. art. 970a, are established by the testimony of David J. Millard, the plaintiffs' expert witness, and that of Ronald Heiser and Lonnie Pace, the expert witnesses produced by the defendants. There was no expansion of any such boundaries or extraterritorial jurisdiction of those cities prior to November 16, 1965. On that date, Houston enacted ordinance 65–1555–BR, and as a result of such annexation, Houston's extraterritorial jurisdiction expanded five miles from the new boundaries to include all contiguous territories not then within the corporate limits or the extraterritorial jurisdiction of any other city. As a matter of law, the extraterritorial jurisdiction of Houston then abutted and surrounded the extraterritorial jurisdiction of Webster and extended through the northern portion of that area later incorporated as the City of Nassau Bay. Webster did not annex any territory from 1963 through November 16, 1965.

■ Nassau Bay was incorporated in 1970 and included within its boundaries certain territory within the extraterritorial jurisdiction of Houston. There is no evidence that Houston gave its consent to such incorporation or that it ever challenged the validity of such incorporation. In 1966, Webster, with the permission of the City of Houston, annexed certain territories situated within the extraterritorial jurisdiction of Houston. As we have held, Houston's ordinance 69–2386 released to Pasadena all of Houston's territorial jurisdiction situated east of the line described in that ordinance, but at that time, it retained extraterritorial jurisdiction of all territory west of that line. Accordingly, Pasadena's annexation of the territory up to that line did not have the effect of expanding the extraterritorial jurisdiction of Pasadena into the area west of the line.

Plaintiffs' Exhibit 134 was prepared by Mr. Millard, a registered public surveyor, based upon his assumption that Houston had ceded or released to Pasadena all of its extraterritorial jurisdiction west of the jurisdictional dividing line described in ordinance 69–2386. He testified that if Houston retained jurisdiction west of the dividing line and if ordinance 65–1555–BR was valid, Houston's extraterritorial jurisdiction would extend southward to surround and abut the extraterritorial limits of Webster as they existed in 1963 and that Nassau Bay would have no extraterritorial jurisdiction to the north of its boundaries.

■ Plaintiffs' Exhibit 134 does not accurately depict the location of the extraterritorial jurisdictions of any of the cities shown thereon. There was no jury finding of actual encroachment upon the territory or extraterritorial jurisdiction of another city, only a finding of encroachment upon the extraterritorial jurisdictions of the other cities "as depicted on Plaintiffs' Exhibit 134." This exhibit and Mr. Millard's testimony relating thereto constitutes no evidence of encroachment as found by the jury in answer to special issue number six. This evidence was based upon a hypothesis without foundation and proves nothing. *See Whiteman v. Harris,* 123 S.W.2d 699 (Tex.Civ.App.—Fort Worth 1938, writ ref'd). Special issue number six should not have been submitted; and the jury's answer thereto should have been disregarded, because it was not supported by evidence having probative force. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966).

■ Nassau Bay was not incorporated until April 2, 1970. There is no evidence that Houston has ever released any of its extraterritorial jurisdiction to Nassau Bay. As a matter of law, under the evidence of this case, Nassau Bay had no extraterritorial jurisdiction to the north of its corporate boundary.

There is evidence that ordinance 77–1668 included in the description of the property annexed a small area of land annexed by the City of Webster. The same territory was again annexed to the City of Webster by an ordinance passed on February 20, 1978. A small portion of the territory described in this second ordinance extended

into the city limits of the City of Houston. However, both the ordinances enacted by the City of Webster and ordinance 77–1668 contained savings or exclusion clauses excepting and excluding from the territory described in the ordinances any territory over which the annexing city had no jurisdiction.

■ An ordinance that attempts to annex territory within the extraterritorial jurisdiction or municipal boundaries of another city is void. *City of Waco v. City of McGregor*, 523 S.W.2d 649 (Tex.1975). Neither of the ordinances in question is void. The exclusion clauses carved out of the territory described in each ordinance any portion situated within the extraterritorial jurisdiction of another city. *See City of Houston v. Harris County Eastex Oaks Water & Sewer District*, 438 S.W.2d 941, 949 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.).

■ The jury also found, in answer to special issue number eight, that the property described in the Houston Block Annexation Ordinance was outside the extraterritorial jurisdiction of Houston. For the reasons set out in our discussion of special issue number six, we find that there is no evidence to support the jury's answer to special issue number eight. The trial court erred in failing to disregard the jury's answer to this special issue.

■ In answer to special issue number 10, the jury found that the property description in the block annexation ordinance failed to close. The description of a tract of real estate does not "close" if a surveyor starting at the recited beginning point and following the recited "calls" would fail to return to the beginning point. *See City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 394–95 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The City of Houston contends that the undisputed evidence establishes as a matter of law that the property description was proper.

Ordinance 77–1668 was a legislative enactment of the City of Houston. The description of the territory annexed thereby was an integral part of such ordinance. The construction of a legislative enactment is a function of the judiciary; it is a matter of law, not of fact. *See Associated Indemnity Corp. v. Oil Well Drilling Co.*, 258 S.W.2d 523, 527 (Tex.Civ.App.—Dallas 1953), *aff'd*, 264 S.W.2d 697 (Tex.1954).

■ Where a survey may be plotted on the ground from an established corner called for in its field notes, which are not ambiguous, as a matter of law it must be so constructed on the ground. Where natural and artificial objects described cannot be located on the ground, the proper method of locating the lines and corners of a grant is by course and distance from the nearest recognized and established corner or artificial object with which the field notes are connected. If there are no natural or artificial marks called for in the field notes that *establish an error in the course or distance called for*, and if there is no evidence as to how the surveys were actually made on the ground, they must be run out by course and distance from known corners with which they connect by their calls. *Gilson v. Universal Realty Co.*, 378 S.W.2d 115, 117, 119–21 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.).

■ While general rules of surveying have been formulated, and some calls have been accorded greater dignity than others, the lowest in dignity may be resorted to and adopted in arriving at the intention of the locator. For example, if a call for the line of an adjoining survey cannot be located with reasonable accuracy and certainty, it should not be permitted to prevail over a call for distance. *Taylor v. Higgins Oil & Fuel Co.*, 2 S.W.2d 288, 300–01 (Tex.Civ. App.—Beaumont 1928, writ dism'd).

All expert witnesses who testified in this case agreed that if the calls for course and distance found in the annexation ordinance were followed without regard to other descriptive matter in the field notes, there would be a proper closure.

An expert witness called by the City of Houston testified that he made a survey on the ground and found no difficulty in fol-

lowing the field notes to a proper closure. He found no natural or artificial marks called for in the field notes that established an error in the courses or distances called for.

Mr. Millard, an expert witness called by the plaintiffs, testified that the field notes would not close because certain calls extended into the boundaries of another municipal corporation and because other calls referred to a monument that could not be located on the ground or by use of any document available to the public.

In determining whether or not calls in field notes are adequate to describe a particular property, that is, whether or not the calls close, the surveyor is not concerned with whether or not the call crosses the city limits of or the extraterritorial jurisdiction line of another city. He merely establishes the line on the ground. The validity of the annexation is not his concern. Mr. Millard's conclusion that the calls do not close was based in part upon his assumption that call No. 2 was "broken" or "stopped" by its encroachment upon his assumed extraterritorial jurisdiction and assumed boundary line of the City of Webster.

Mr. Millard testified that he was able to establish the beginning point of call No. 10 and, from the course and distance given therein, this call could be plotted. However, because he had been unable to ascertain the location of the proposed Choate Road, and because a call for distance was to terminate in the planned north right-of-way of such proposed road, he would not establish or plot the call. He refused to plot the call, because he was not sure the distance given actually terminated in the planned right-of-way line and because a call for an artificial monument prevails over a call for distance.

Mr. Millard testified that he would be unable to establish on the ground or plot calls no. 12 and 13 because these calls were for a line running along the proposed Choate Road, although he could do so by resorting to course and distance stated in each of the calls had there been no reference to Choate Road.

In addition to the metes and bounds description and the calls for the proposed Choate Road, the description found in the ordinance states that all lines, points, and corners described in call no. 4 and subsequent calls are located on the common extraterritorial jurisdiction boundary line between the City of Houston and the City of Pasadena as described in Houston Ordinance 69–2386, effective April 1, 1970. Mr. Millard testified that he was able to locate that line.

■ It is clear from the testimony of all the expert witnesses that the lines and corners called for in the metes and bounds description of the annexed territory as found in ordinance 77–1668 can be located on the ground and that the lines of the survey properly close. The trial court erred in denying defendants' motion for judgment non obstante veredicto insofar as it relied on the jury's answer to special issue number 10. Undisputed evidence establishes as a matter of law that the property description forms a closure. Special issue number 10 should not have been submitted to the jury, and the answer made thereto should have been disregarded. *See Lower Nueces River Water Supply District v. Cartwright*, 274 S.W.2d 199, 202–05 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.); *Gage v. Owen*, 435 S.W.2d 559, 562 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.); *Ehlers v. Delhi-Taylor Oil Corp.*, 350 S.W.2d 567, 572–73 (Tex.Civ. App.—San Antonio 1961, no writ); *City of Athens v. Andrews*, 231 S.W.2d 928, 932, 934 (Tex.Civ.App.—Dallas 1950, writ ref'd).

Pursuant to a written request of the Mayor of the City of Houston, the first assistant city secretary called a special meeting of the City Council of the City of Houston for Saturday, August 27, 1977, for the purpose of considering several matters related to the establishment of the boundaries of the City of Houston in the Clear Lake area of Harris County, Texas. One of the matters listed was "the introduction and first reading of an ordinance or ordi-

nances annexing portions of the Clear Lake area to the City of Houston." This notice was posted on August 22, 1977.

■ Plaintiffs contend that the annexation was instituted by the posting of this notice. Section 6 of the Municipal Annexation Act provides that the annexation of territory by a city shall be brought to completion within 90 days of the date on which the governing body of such city institutes annexation proceedings. The annexation proceedings were completed 92 days after the date on which the notice was posted, but only 87 days from the date on which the ordinance was introduced and passed on first reading. We hold that the later date, August 27, 1977, was the date on which "the governing body instituted annexation proceedings." *See City of Duncanville v. City of Woodland Hills,* 489 S.W.2d 557, 558 (Tex.1972) (per curiam).

The undisputed evidence in this case establishes (1) that the area annexed by ordinance 77–1668 (the block ordinance) was within Houston's extraterritorial jurisdiction; (2) that this area was not within the extraterritorial jurisdiction or corporate boundaries of one or more other cities because of the exclusionary provisions of the ordinance; (3) that the property description in the ordinance effected a closure; and (4) that Houston complied with the procedural requirements of Tex.Rev.Civ.Stat.Ann. art. 970a, sec. 6 (The Municipal Annexation Act), both as to providing an opportunity for all interested persons to be heard and as to completing the annexation within 90 days.

In addition, the attack on the validity of ordinance 77–1668 was a collateral attack. The State of Texas, acting by and through the county attorney of Harris County, intervened in the cause by filing an information in the nature of quo warranto as a first amended plea in intervention. This amended plea contained no allegations challenging the validity of ordinance 77–1668.

■ As a general rule, the validity of an annexation ordinance can be attacked only by a direct suit in the nature of quo warranto by the State, or in a proceeding in which the State is a party. *Kuhn v. City of Yoakum,* 6 S.W.2d 91, 91–92 (Tex. Comm'n App.1928, judgmt adopted). Private parties who are directly affected by an annexation ordinance, as by taxation, may collaterally attack such an ordinance if it is void; but it is their burden to prove such invalidity. *Fox Development Co. v. City of San Antonio,* 468 S.W.2d 338, 339 (Tex. 1971).

■ The State of Texas, as intervenor, was limited to the scope of relief sought by it in its petition in the nature of quo warranto. *See City of West Lake Hills v. State ex rel. City of Austin,* 466 S.W.2d 722, 728 (Tex.1971). The City of Houston had a public hearing on this annexation and complied with the time and method of giving notice of such hearing prescribed by law. Plaintiffs' contention that all persons wishing to be heard at the hearing were not afforded that opportunity is a challenge directed towards an irregularity in the annexation process. If proven, it would not show an entire want of power on the part of the City to annex. Proof of irregularity in the exercise of annexation authority is not in itself a sufficient basis to declare the ordinance void. *May v. City of McKinney,* 479 S.W.2d 114, 120 (Tex. Civ.App.—Dallas 1972, writ ref'd n.r.e.); *Forbes v. City of Houston,* 304 S.W.2d 542, 546 (Tex.Civ.App.—Galveston 1957, writ ref'd n.r.e.), *cert. denied,* 357 U.S. 905, 78 S.Ct. 1151, 2 L.Ed.2d 1156 (1958). The collateral attack on the City of Houston ordinance based on the alleged failure to provide an opportunity for all interested persons to be heard cannot be sustained.

■ All of the land described in the strip annexation ordinance (No. 77–1423) lies within the territory annexed by the City of Houston by the block annexation ordinance. Therefore, if ordinance 77–1668 is valid, the validity of ordinance 77–1423 is irrelevant. The appellants have presented a number of points of error that have not been discussed individually, because the trial court erred in denying the appellants' motion for judgment non obstante veredic-

■■■■■■■■■■■■■■■■■■■■■

to insofar as the judgment relates to ordinance 77–1668.

Because we find Ordinance No. 77–1668 valid, we do not reach the points of error relating to Ordinance No. 77–1423.

The judgment declaring the City of Houston Ordinance 77–1668 void is reversed, and judgment is here rendered declaring said ordinance valid. The injunction is dissolved.